# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3335

_____

| | | |
|---|---|---|
| In re: Farmland Industries, Inc., | * | |
| | * | |
| Debtor. | * | |
| ------------------------------------------------- | * | |
| Official Committee of Unsecured | * | |
| Creditors, | * | Appeal from the United States |
| Appellant, | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| v. | * | |
| | * | |
| Farmland Industries, Inc., et al., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 13, 2004
Filed: February 10, 2005

_____

Before LOKEN, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

LOKEN, Chief Judge.

Farmland Industries, Inc. and its affiliates ("Farmland") filed voluntary petitions for Chapter 11 bankruptcy relief. Because Farmland had two large groups of unsecured creditors with competing claims, the United States Trustee used the authority conferred by 11 U.S.C. § 1102(a) to appoint two creditors' committees, the Official Committee of Unsecured Creditors to represent trade creditors (the "Unsecured Creditors Committee"), and the Official Committee of Bondholders to

represent bondholders (the "Bondholders Committee"). Each committee employed its own financial advisor, Houlihan Lokey Howard & Zukin Financial Advisors ("Houlihan Lokey") for the Unsecured Creditors Committee, and Ernst & Young Corporate Finance ("Ernst & Young") for the Bondholders Committee. Each advisor negotiated a flat monthly fee plus a contingent or "success" fee based upon the amounts ultimately recovered by the members of the employing committee.

The Bondholders Committee agreement provided that Ernst & Young's contingent fee would be paid from amounts recovered by the bondholders. Acting pursuant to 11 U.S.C. §§ 328(a) and 1103(a), the bankruptcy court[1] approved that agreement. But the Unsecured Creditors Committee agreement provided that Houlihan Lokey's contingent "transaction fee" would be paid by all creditors as a general administrative expense. Farmland and the Bondholders Committee objected to this term of the engagement. The bankruptcy court ruled that Houlihan Lokey's transaction fee must be paid from amounts recovered by members of the Unsecured Creditors Committee. That Committee appealed to the Eighth Circuit Bankruptcy Appellate Panel ("BAP"), which affirmed the bankruptcy court. The Committee now appeals the BAP's decision. We affirm.

## I. Court of Appeals Jurisdiction

Once again, experienced bankruptcy attorneys have ignored the fact that Congress has conferred broader appellate jurisdiction on the BAP than on this court. Compare 28 U.S.C. § 158(b) with § 158(d). The bankruptcy court's order was issued prior to confirmation of Farmland's Chapter 11 plan of reorganization. Although the BAP's jurisdiction is not limited to final orders, the BAP concluded that the ruling was a final order because it finally determined one issue -- the manner in which

_____

[1]The Honorable JERRY W. VENTERS, United States Bankruptcy Judge for the Western District of Missouri.

Houlihan Lokey's transaction fee would be paid. This court construes the final order doctrine more flexibly in bankruptcy cases than in other contexts. But we have never suggested that any interlocutory order that resolves a single issue is final for purposes of 28 U.S.C. § 158(d). Rather, "an order entered before the conclusion of a complex bankruptcy case is not appealable under § 158(d) unless it finally resolves a discrete segment of that proceeding," that is, a "relevant judicial unit" of the proceeding. In re Woods Farmers Co-op. Elevator Co., 983 F.2d 125, 127 (8th Cir. 1993). To decide that pragmatic question, we examine three factors, "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; (3) the extent to which a later reversal on that issue would require recommencement of the entire proceeding." In re Koch, 109 F.3d 1285, 1287 (8th Cir. 1997) (quotation omitted).

In December 2003, some three months after the Unsecured Creditors Committee filed this appeal, the bankruptcy court approved Farmland's Chapter 11 plan of reorganization effective May 1, 2004. The plan provides for payment of Houlihan Lokey's transaction fee in accordance with the order being appealed. The confirmation order recites that this appeal is pending and provides that the plan "shall automatically be deemed amended and modified as necessary" to reflect a contrary decision by this court. Thus, even if the ruling on appeal was not final when issued, it is now incorporated in the plan of reorganization, which is a final order. In these circumstances, we conclude we have jurisdiction "because the bankruptcy proceeding is on the verge of being completed pending the resolution of the dispute before this Court [and] a delay in review [of this dispute] would serve no purpose." First Nat'l Bank v. Allen, 118 F.3d 1289, 1294 (8th Cir. 1997). Accord In re Broken Bow Ranch, Inc., 33 F.3d 1005, 1008 (8th Cir. 1994): In re Interwest Business Equipment, Inc., 23 F.3d 311 (10th Cir. 1994); 14 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3926.2, at pp. 290-91 n.28 (2d ed. 1996).

The plan of reorganization also dissolved the Unsecured Creditors Committee and the Bondholders Committee on the plan's effective date, May 1, 2004. Just prior to oral argument in September 2004 (long after counsel were aware of the potential problem), counsel raised the question whether the appeal to this court now lacked one or more requisite parties. We canceled argument and called for additional memoranda by interested parties. Counsel for the Unsecured Creditors Committee and counsel for the Liquidating Trustee urged us to decide the appeal because the merits were fully briefed before the plan's effective date and trade creditors and bondholders continue to have the same financial interest in the issue. As we have explained, confirmation of the plan conferred rather than divested us of jurisdiction. The confirmation order specifically provides that the affected portion of the plan may be modified by our resolution of the issue presented. This provision demonstrates that the bankruptcy court did not intend to affect this appeal by "dissolving" the creditors' committees that were conducting it on behalf of their respective members. We therefore proceed to the merits.

## II. The Merits

Like the BAP, we review the bankruptcy court's interpretation of the Bankruptcy Code de novo and its findings of fact for clear error. In re Quality Processing, 9 F.3d 1360, 1363 (8th Cir. 1993). We review issues committed to the bankruptcy court's discretion for an abuse of that discretion. In re Jones Truck Lines, Inc., 63 F.3d 685, 686 (8th Cir. 1995). The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous. Stalnaker v. DLC, Ltd., 376 F.3d 819, 825 (8th Cir. 2004).

A. No abuse of discretion. Without objection, the bankruptcy court first entered an interim order approving the retention of Houlihan Lokey as the Unsecured Creditors Committee's financial advisor but reserving decision on the transaction fee dispute. Following extensive briefing and argument, the court ruled that, as a matter

of fairness, the contingent portion of Houlihan Lokey's total fee should be paid out of the recovery by members of the Unsecured Creditors Committee. Noting that bondholder estimated claims were substantially larger and the Bondholders Committee agreement with Ernst & Young "is fairer and more equitable to all creditors," the court reasoned that bankruptcy success fees are customarily paid by those who contract for them, Houlihan Lokey was engaged to work specifically for the benefit of the trade creditors, and the Unsecured Creditors Committee should not be able to impose this expense on all creditors over the objections of Farmland and the Bondholders Committee.

The BAP concluded that the bankruptcy court did not abuse its discretion in ruling that the transaction fee "should be paid from any distributions made to the unsecured creditors represented by" Houlihan Lokey because that advisor "is working specifically for the benefit of those creditors," the fee was negotiated by a committee representing those creditors, and the bondholders should not be required to pay a portion of the transaction fee because they are paying the contingent portion of Ernst & Young's fee. The Unsecured Creditors Committee does not appeal this portion of the BAP's decision. Rather, the Committee argues that the bankruptcy court's order was based on clearly erroneous findings of fact because there was insufficient evidence that (a) Houlihan Lokey was working solely for the benefit of the trade creditors, and (b) the fee agreement between the Bondholders Committee and Ernst & Young "is fairer and more equitable to all creditors." After careful review of the record, we conclude these contentions are without merit because they address only tangential issues. The bankruptcy court needed no evidentiary hearing to conclude that, as a matter of fairness, it should exercise its discretion by treating on the same basis the contingent portions of the fees to be paid to the financial advisors retained by two competing classes of creditors.

B. No Bankruptcy Statute Bars This Ruling. The Bankruptcy Code expressly authorizes a creditors committee, with the court's approval, to employ "a professional

person . . . on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). When applicable, § 330 sets forth standards for compensating professionals who have been retained under § 328. Among other criteria, § 330(a)(4)(A)(ii) provides that the court shall not allow compensation for services that are neither beneficial to the debtor's estate nor "necessary to the administration of the case." Section 503(b)(2) provides that compensation awarded under § 330(a) "shall be allowed administrative expenses." Section 507(a)(1) grants "first" priority to "administrative expenses allowed under section 503(b)." See generally Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 4-5 (2000).

Before the bankruptcy court, the parties agreed that Houlihan Lokey's transaction fee would be treated as an administrative expense under § 503 and be subject to review by the bankruptcy court under § 330. Starting with that proposition, the Unsecured Creditors Committee argues that, because § 330 and § 503 require that compensated services benefit the Farmland estate, *all* payments for those services must come from the estate's general funds. Any other conclusion, the Committee adds, would violate the first priority accorded administrative expenses in § 507. The Unsecured Creditors Committee bases these contentions entirely on the purported plain meaning of these statutes, citing no supporting case law.

Like the bankruptcy court and the BAP, we disagree with the Committee's interpretation of these statutes. Neither § 330 nor § 503 provides that payments to professionals that qualify as administrative expenses *must* be paid from any specific funds of the debtor. We do not doubt that, in the typical Chapter 11 proceeding where only one financial advisor is employed, the advisor's administrative expense claims are paid from the general funds of the debtor's estate. But that is simply a sensible way to proceed. The practice does not suggest that, when the bankruptcy court determines that two advisors representing two competing classes of creditors are "necessary to the administration of the case," § 330(a)(4)(A)(ii) *precludes* the court from providing at the outset that the contingent portion of each advisor's fees

-6-

will be paid out of the creditors' recovery that was enhanced by that advisor's services. In our view, the discretion to impose such a provision (or to refuse approval of an agreement that lacks such a provision) is clearly consistent with the bankruptcy court's statutory authority under § 328(a) to approve the employment of a professional "on *any* reasonable terms and conditions of employment."

The Unsecured Creditors Committee further argues that the concept of fairness invoked by the bankruptcy court would lead to absurd results "when applied broadly in these cases." But that is an argument addressed to the court's exercise of discretion, not to its statutory authority. Even if it would be unwise or inequitable in many cases to decide that particular creditors should bear a disproportionate share of an administrative expense claim, that does not mean that Congress has denied bankruptcy courts the discretion to do so. Sections 330 and 503 are silent on this question; reading their silence in conjunction with § 328(a) strongly suggests that the Bankruptcy Code confers the discretion the bankruptcy court here exercised.

We agree with the Unsecured Creditors Committee that § 507 must also be considered in deciding this issue. It provides that administrative expense claims are entitled to a higher "priority" than unsecured claims. Priority in a Chapter 11 case means that the bankruptcy court may not confirm a plan unless it provides that the holder of each administrative expense claim "will receive on account of such claim cash equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9)(A); see In re Hechinger Inv. Co., 298 F.3d 219, 224 (3d Cir. 2002). Here, there is no doubt that the entire administrative expense claim will be paid because Houlihan Lokey is only entitled to a transaction fee if the debtor's estate has sufficient funds to permit a recovery by the trade creditors, the recovery from which the transaction fee will be paid. Thus, in confirming Farmland's plan of reorganization, the bankruptcy court found that the plan "provides for treatment of Administrative Expense Claims . . . in the manner required by Section 1129(a)(9)." In these unusual circumstances, the priority requirements of § 507 have been satisfied. Claim priority means that

administrative claims must be paid in their entirety before lower priority claims may be paid. It does not mean that the amounts to be paid to lower priority claimants may not be *calculated* before the administrative expense claims are *paid*.

The Unsecured Creditors Committee further argues that the bankruptcy court's order results in a surcharge on certain unsecured creditors that is contrary to 11 U.S.C. § 506(c). We agree with the bankruptcy court and the BAP that the order does not effect a surcharge.

Finally, the Unsecured Creditors Committee argues that the BAP erred in failing to reverse the bankruptcy court for violating the "binding mandate" contained in a footnote in an unrelated BAP opinion, In re Thermadyne Holdings Corp., 283 B.R. 749, 754 n.6 (8th Cir. BAP 2002). The Committee does not ask us to review the merits of the legal rule suggested in the Thermadyne footnote nor the unsettled question whether BAP decisions are binding precedent. See In re Carrozzella & Richardson, 255 B.R. 267, 272-73 (D. Conn. 2000). Taking this contention as the Committee frames it, we conclude it is without merit because the BAP's analysis in this case is entirely consistent with its prior decision in Thermadyne for the reasons stated in the BAP opinion.

The order of the BAP filed August 7, 2003 is affirmed.

_____