# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1878

_____

In re: Deborah Alice Neal,           \*

                             \*

           Debtor,       \*

                             \*

_____      \*

                             \*

Deborah Alice Neal; Unnamed     \*

Creditor, No. 1; Unnamed Creditor,  \*

No. 2; Unnamed Creditor No. 3,    \*

                             \*

          Appellants,    \*

                             \*   Appeal from the United States

          v.              \*   District Court for the

                             \*   Western District of Missouri.

The Kansas City Star,         \*

                             \*

          Appellee.      \*

_____

Submitted: June 14, 2006
Filed: August 29, 2006

_____

Before SMITH, HEANEY, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Deborah Alice Neal, former Municipal Judge in Kansas City, Missouri, filed for Chapter 7 bankruptcy in 2005. As part of her bankruptcy filings, she provided a complete list of her creditors, including attorney creditors ("Unnamed Creditors"), which was filed under seal. The Kansas City Star ("The Star"), Kansas City's largest

newspaper, filed a motion to vacate the bankruptcy court's order sealing the names of Neal's creditors. The bankruptcy court denied The Star's motion. The Star appealed that decision in district court.[1] The district court reversed the bankruptcy court's order and vacated the order sealing the list of Neal's creditors. Neal and the Unnamed Creditors appeal. For the reasons stated below, we reverse the judgment of the bankruptcy court.

## I. *Facts*

The debtor in this case, Deborah Alice Neal, served as a Kansas City, Missouri, Municipal Judge from 1996 until she resigned in November 2004. In April 2004, Neal's gambling addiction became public after Neal was caught in an early morning raid on a Kansas City, Kansas, casino. Neal admitted her addiction to the Missouri Commission on Retirement, Removal and Discipline of Judges and also admitted that she had received loans from local attorneys. The Star heavily publicized Neal's circumstances. In particular, The Star reported on loans Neal received from attorneys, her investigation by the Missouri Judicial Commission, her resignation from the bench, and her hospitalization for mental care.

After an investigation, federal authorities charged Neal criminally, and she pleaded guilty to mail fraud for not disclosing the loans she received from numerous attorneys on mandatory financial disclosures sent to the State of Missouri. She was sentenced to 28 months' imprisonment. In her plea agreement, Neal acknowledged that she used her official position to obtain loans from local attorneys while serving as a municipal judge, but she maintained that she did not give favorable rulings in exchange for loans. However, the district court, the Assistant United States Attorney, and The Star all mentioned that Neal may have provided favorable treatment to some

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

of the attorneys who made loans to her, including dismissing traffic citations issued to a defense lawyer who loaned her money.[2]

Neal provided the names of the attorneys who loaned her money to the United States Attorney and to the Missouri Office of Chief Disciplinary Counsel ("OCDC"). OCDC is the arm of the Missouri Supreme Court that investigates disciplinary matters involving licensed attorneys in the State of Missouri. Presumably, the OCDC is currently conducting an investigation into these attorneys' conduct. Neither the United States Attorney's Office nor the OCDC have released the names of the attorneys implicated.

As part of Neal's Chapter 7 bankruptcy filings, she provided a list of all of her creditors, including attorney creditors, to the bankruptcy court.[3] In conjunction with Neal's bankruptcy filing, she filed a motion to file under seal the names of the attorney creditors pursuant to 11 U.S.C. § 107(b)(2), citing the "scandalous" and "defamatory" exceptions to public disclosure. The bankruptcy judge granted Neal's motion. However, the order was not final, and the bankruptcy judge reserved the right to revisit the issue.

---

[2]During the sentencing hearing, the district court stated, "The government does not claim that it has proof of favors given in exchange for or in anticipation of receiving loans." Sent. Tr. 4. However, the district court did mention two situations that create suspicion of favoritism. "One is troubling as a possible fixed-ticket situation." (Sent. Tr. 5). The other situation involved a defendant who got a favorable ruling, and six months later loaned Neal $5,000, which has not been repaid in whole or in part. (Sent. Tr. 6).

[3]According to the Missouri Code of Judicial Conduct, it is not necessarily unethical for an attorney to loan money to a judge. However, Missouri Supreme Court Rule 2.04, Canon 4D.3(c) states that "a judge . . . may accept any other gift, bequest, favor or loan only if the donor is not a party or other person whose interests have come or are likely to come before the judge, and, if its value exceeds $100, the judge reports it in the same manner as compensation is reported in Canon 4H."

The Star filed a motion to vacate the bankruptcy court's order sealing the names of Neal's creditors. The bankruptcy court denied The Star's motion and made its order sealing the list of Neal's creditors final. The Star then appealed the bankruptcy court's order in district court. The district court reversed the bankruptcy court, finding that there is nothing "scandalous" about the list of Neal's creditors itself and that the bankruptcy court improperly construed and applied § 107(b)(2) when it considered facts outside of the papers filed in the bankruptcy case in determining that the list was scandalous. The district court also held that the bankruptcy court improperly applied Federal Rule of Bankruptcy Procedure 9018. Consequently, the district court vacated the bankruptcy court's order sealing the list of Neal's creditors. Neal and the Unnamed Creditors appeal.

## II. *Discussion*

Neal and the Unnamed Creditors raise the following arguments on appeal: (1) the bankruptcy court did not err in determining that the list of Neal's creditors is "scandalous" within the meaning of 11 U.S.C. § 107(b)(2); (2) the bankruptcy court did not err in considering matters outside of the bankruptcy filings, or the context of those filings, when evaluating whether the list was "scandalous;" and (3) the bankruptcy court did not abuse its discretion in ruling that Fed. R. Bank. P. 9018 gave it the authority to seal the list of Neal's creditors to protect governmental matters made confidential by statute or regulation.[4]

### A. *"Scandalous" Within the Meaning of 11 U.S.C. § 107(b)(2)*

"[W]e review for clear error the bankruptcy court's factual findings, and we review de novo the bankruptcy court's legal conclusions, as well as its conclusions involving mixed questions of law and fact." *DeBold v. Case,* 452 F.3d 756, 761 (8th

---

[4]The appellants also argue that the district court applied the incorrect standard of review to the bankruptcy court's finding that the list of Neal's creditors is "scandalous." However, because we review the decision of the bankruptcy court on appeal, the appellants' argument is moot.

Cir. 2006) (citing *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Housing Auth.*, 339 F.3d 702, 710–11 (8th Cir. 2003)). The bankruptcy court's interpretation of § 107(b)(2), that it could consider the context of the material presented in a bankruptcy proceeding to determine whether the material is "scandalous," is a legal conclusion that we review de novo. *In re Colsen*, 446 F.3d 836, 839 (8th Cir. 2006). However, whether Neal's creditor list is "scandalous" within the meaning of § 107(b)(2) presents a factual question reviewed for clear error.

The appellants posit that the bankruptcy court has broad discretion to determine if material falls under the protection of § 107(b)(2) and that it is widely accepted that courts can consider the context of material under § 107(b)(2). According to the appellants, the bankruptcy court may properly consider context, such as the purpose for which information is sought, the magnitude of harm, the availability of proper access through other means, and the environment in which the material will be released. Thus, the appellants claim that the district court erred in determining that the bankruptcy court's consideration of context was improper.

Further, the appellants contend that the district court erred in concluding that the list of Neal's creditors was not scandalous within the meaning of § 107(b)(2). The appellants assert that the bankruptcy court had ample evidence before it to support its finding that the release of the Unnamed Creditors' names would cause a reasonable person to alter his or her opinion of the attorneys' moral character. Moreover, because the list of Neal's creditors does not distinguish between attorneys who acted unethically and those who did not, the list will brand all listed attorney creditors as guilty of wrongdoing, ethical violations, and possible criminal behavior. Appellants also point out that attorneys who loaned money to Neal and were repaid are not on the list of Neal's creditors. For those reasons, the appellants contend that the bankruptcy court was correct in determining that Neal's list of creditors is "scandalous" within the meaning of § 107(b)(2).

For the reasons stated below, we find that the bankruptcy court did not err in considering the context of the filing of Neal's list of creditors to determine whether the material contained therein is "scandalous"; however, we reverse the bankruptcy court's finding that Neal's creditor list is "scandalous" within the meaning of § 107(b)(2).

Generally, "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). However, "the right to inspect and copy judicial records is not absolute." *Id.* at 598.

> Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify public spite or promote public scandal . . . . Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption.

*Id.* (internal citations and quotations omitted). Although the court is given this supervisory power, "only the most compelling reasons can justify non-disclosure of judicial records." *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (internal brackets and quotations omitted).

"In the bankruptcy context, the right of public access is codified in a specific statutory provision, 11 U.S.C. § 107." *Id.* at 6–7. Section 107 states in relevant part:

> (a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –

> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

"Section 107, which Congress enacted in 1978, establishes a broad right of public access, subject only to limited exceptions set forth in the statute, to all papers filed in a bankruptcy case." *Gitto Global*, 422 F.3d at 7. "If a paper filed in a bankruptcy court fits within § 107(b)(1) or (2), protection is mandatory when requested by a 'party in interest.'" *Id.* (internal brackets and quotations omitted). "[I]ssues concerning public disclosure of documents in bankruptcy cases should be resolved under § 107, not under the common law." *Id.* at 8 (internal citation and quotations omitted).

> Although there is virtually no legislative history for § 107, the plain language of § 107(a) evinces a clear congressional intent that papers filed in bankruptcy cases be available to the public. Many, if not the vast majority, of these papers will include material that is likely to affect an individual's reputation in the community.

*Id.* at 8–9.

For the appellants to prevail under § 107(b)(2), they must show that they are an interested party and that the allegations contained in the sealed complaint are scandalous. *In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (N.D. Ohio 1995). Under § 107(b)(2), an interested party must show more than injury to reputation to withhold papers filed in a bankruptcy case from public access. *Gitto Global*, 422 F.3d at 11. In addition to looking at the impact of the material on the person's reputation, the court must also look to the role of the material in the court records. *Id.* at 12. "[T]he purpose of including material in a paper filed with the court should inform the inquiry into whether that material falls within the § 107(b)(2) exception." *Id.* at 13. The question

for the court then becomes "whether a reasonable person could alter their opinion of Defendants based on the statements therein, taking those statements in the context in which they appear." *Phar-Mor*, 191 B.R. at 679.

We find the First Circuit's *Gitto Global* decision, although discussing the "defamatory" prong of § 107(b)(2), instructive. The *Gitto Global* court employed a context-sensitive inquiry, explaining that "both the case law and the interpretation of sources analogous to § 107(b)(2) support a context-sensitive approach to the exception." *Id*. at 13.

The bankruptcy court found that Neal's creditor list was "scandalous" pursuant to § 107(b)(2). We hold that the bankruptcy court clearly erred in making this finding and reverse. In this case, both parties and the bankruptcy court acknowledged that the creditors list itself is not scandalous nor does it contain scandalous matter. The creditors list is just that–a list of persons or entities to whom Neal owes money. Potential scandal only surfaces when one looks "outside the lines" of the bankruptcy proceeding, looks outside the context of this bankruptcy filing, and speculates as to motives of the creditor and the debtor. Moreover, there is no allegation that the list of Neal's creditors was filed for an improper purpose, such as to gratify public spite or promote public scandal. *See Nixon*, 435 U.S. at 598 ("[T]he common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify public spite or promote public scandal. . . ."). The creditors list was filed because the bankruptcy law requires it to be filed and apparently contains no information other than as required by law. We do not believe Neal's list of creditors "serve[s] as [a] reservoir[] of libelous statements for press consumption." *Phar-Mor*, 191 B.R. at 679. Looking to the "purpose of the statements at issue and the context in which they were made," we hold that Neal's creditor list is not "scandalous" pursuant to § 107(b)(2). *Gitto Global*, 422 F.3d at 13. In looking at the context of the filing, we evaluate the filer's purpose, not what a third party's purpose will be in gaining access

to that filing. Here, Neal's purpose in filing her list of creditors was to comply with the rules of the bankruptcy court to facilitate her bankruptcy discharge.

The unintended, potential secondary consequence of negative publicity to attorney creditors is regrettable but not a basis for sealing the filing. There is no indication or allegation that any of the information contained in Neal's list of creditors is false, defamatory, or scandalous. In cases analyzing § 107(b)(2), courts have repeatedly stated that injury or potential injury to reputation is not enough to deny public access to court documents. *See id.* at 11 (stating that papers filed in bankruptcy court did not fall under § 107(b)(2) merely because they would have a detrimental impact on one's reputation); *In re Analytical Sys., Inc.*, 83 B.R. 833, 836 (N.D. Ga. 1987) (finding of possible embarrassment not enough to justify sealing court records). For these reasons, we reverse the bankruptcy court's order sealing Neal's list of creditors.

B. *Sealing of the Creditor List Pursuant to Fed. R. Bank. P. 9018*

The appellants argue that the bankruptcy court has broad discretion to determine if matters fall within the protections of Rule 9018. Specifically, appellants contend Rule 9018(3) authorizes bankruptcy judges to protect the confidentiality of governmental matters. Appellants seek to have Neal's creditor list considered a governmental matter. The appellants state that the Missouri Supreme Court and the OCDC have established procedural rules for attorney disciplinary investigations in Missouri. Under these rules, OCDC attorney investigations remain confidential until disposition. The appellants note that The Star has asserted in its newspaper that the attorneys on the list of Neal's creditors are currently under investigation by the OCDC. Appellants contend, therefore, that if The Star obtains the names of the attorneys who appear on Neal's creditors list, The Star will identify particular attorneys that are under investigation by the OCDC, contrary to Missouri's policy of confidentiality. Additionally, the appellants argue that the public's interest in knowing the names will still be protected because the investigated attorney's names will be disclosed at the

completion of the Missouri disciplinary process. The names of those attorneys found to be in violation of the disciplinary rules are reported monthly in *The Missouri Bar Journal*, and a comprehensive listing of all disciplinary actions taken for the year is published annually in the same publication. According to appellants, publication of the names would frustrate the purpose of the OCDC confidentiality rules. The Bankruptcy court agreed with appellants' position.

The Star responds by contending that Missouri's Supreme Court Rules on attorney discipline do not render Neal's creditor list confidential. Those rules only render confidential the "records of all proceedings" before the OCDC. The Star maintains that the creditor list is not a "communication submitted to" Missouri's disciplinary authorities, nor does the "records of all proceedings" language contemplate Neal's creditors list. For that reason, the Star urges that the order of the bankruptcy court be reversed.

Rule 9018(3) states in relevant part: "On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . (3) to protect governmental matters that are made confidential by statute or regulation." "We review issues committed to the bankruptcy court's discretion for an abuse of that discretion. The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *In re: Farmland Indus., Inc.*, 397 F.3d 647, 650–51 (8th Cir. 2005).

In addition to Rule 9018(3), the bankruptcy court cited two Missouri Supreme Court Rules in support of its decision. Missouri Supreme Court Rule 5.31(b) states:

> The records of all proceedings occurring prior to the acceptance of a written letter of admonition or the filing in this Court of a decision of a disciplinary hearing panel finding a violation of Rule 4 or of an information directly in this Court shall not be made

> public unless ordered by the Court or the lawyer shall so request.
> . . .

Missouri Supreme Court Rule 5.315(a) states "[c]ommunications submitted to the advisory committee, chief disciplinary counsel, regional disciplinary committees, disciplinary hearing panels, or the staffs of any of these entities relating to lawyer misconduct or disability are absolutely privileged if submitted in good faith. No lawsuit predicated on such communications may be instituted."

The bankruptcy court held that investigations conducted by the OCDC are governmental matters pursuant to Rule 9018 and that the names of Neal's attorney creditors are part of that investigation. Thus, the bankruptcy court concluded that it had the authority to issue an order sealing the list of Neal's creditors to protect the confidentiality of the ongoing OCDC investigation. Although we agree that investigations conducted by the OCDC are governmental matters, we disagree that Neal's list of creditors constitutes a "record" of a proceeding of OCDC, requiring that it be kept confidential under Rule 9018. Rule 5.31(b) mandates confidentiality for "the records of all proceedings" before the OCDC. In this case, Neal's list of creditors is not a record obtained from or created for an OCDC investigation. As previously stated, Neal's list of creditors is no more than that, a list of her creditors that she was required to provide as part of her bankruptcy filing. The bankruptcy court found that because Neal's creditors list was forwarded to the OCDC, its disclosure would, in effect, publish the names of the attorneys under investigation. However, Neal's creditors list is a presumptively public judicial record and was not "made confidential" by the OCDC.

Although case law on Rule 9018 is sparse, *United States v. Transport Administrative Services*, 260 F.3d 909 (8th Cir. 2001) provides some guidance. In that case, the appellants' qui tam action, filed after they were discharged from bankruptcy, was barred under, *inter alia*, principles of judicial estoppel. *Id*. at 919. The appellants

argued that the requirement that a qui tam complaint be filed under seal conflicted with the district court's requirement that they publicly disclose the qui tam claim in the bankruptcy proceeding. *Id*. at 918. We held that the appellants could have filed a motion in the bankruptcy court under Rule 9018 to prevent public disclosure of their qui tam action. *Id*. Title 31 U.S.C. § 3730(b)(2) prevented the appellants from publically filing their qui tam action. *Id*. In an effort to "protect governmental matters that are made confidential by statute," it would have been appropriate for the bankruptcy court to prevent public disclosure of the qui tam action by invoking Rule 9018. *Id*. at 918–19.

This case, however, is distinguishable from *Transport Administrative Services*. Neal's list of creditors was not an OCDC record requiring confidentiality when she filed for bankruptcy. Moreover, unlike *Transport Administrative Services*, which involved a rather straight-forward federal statute, this case involves a Missouri Supreme Court Rule regarding "records" of disciplinary proceedings. Our interpretation of that Rule is that "records" generated by the OCDC in its investigation of attorney conduct are to be confidential. Here, the list of Neal's creditors is not a "record" created for an OCDC investigation. The nondisclosure of the names under investigation by the United States Attorney's Office, the district court, and the OCDC is immaterial to the question before this court, which is whether or not the list of Neal's creditors is a record of an OCDC investigation. We hold that Neal's creditor list is not a "governmental matter made confidential by statute or regulation." Rule 5.31(b) does not transform the list of Neal's creditors into a "record" of an OCDC investigation simply because the list of Neal's creditors was forwarded to OCDC. As such, the bankruptcy court abused its discretion in relying on Rule 9018 to seal the list of Neal's creditors.

### III. *Conclusion*
For the reasons stated above, we reverse the judgment of the bankruptcy court.

_____