# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3404

_____

In re: Gary Wayne Pyatt,

        Debtor.

_____

Tracy Brown,

        Appellant,

    v.

Gary Wayne Pyatt,

        Appellee.

_____

Robert J. Blackwell, Chapter 7 Trustee;
Rice Pete Burns, Chapter 7 Trustee;
James Cole, Chapter 7 Trustee;
Fredrich J. Cruse, Chapter 7 Trustee;
Rebert E. Eggmann, Chapter 7 Trustee;
Janice A. Harder, Chapter 7 Trustee;
Charles W. Riske, Chapter 7 Trustee;
Leslie A. Davis, Chapter 7 Trustee;
National Association of Bankruptcy
Trustees,

        Amici on Behalf
        of Appellant,

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*   Appeal from the United States
\*   Bankruptcy Appellate Panel
\*   for the Eighth Circuit.
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

National Association of Consumer              *
Bankruptcy Attorneys,                        *
                                             *
         Amicus on Behalf                    *
         of Appellee.                        *

                          _____

                  Submitted:  April 13, 2007
                      Filed:  May 23, 2007
                          _____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.
                          _____

MURPHY, Circuit Judge.

       Gary Wayne Pyatt filed a voluntary petition for chapter 7 bankruptcy relief.  His petition did not list several checks which had been written prior to his filing but not yet honored.  The trustee moved to compel Pyatt to turn over to the estate the value of these checks which amounted to $1938.76.  The bankruptcy court granted the motion, and Pyatt appealed to the bankruptcy appellate panel[1] which reversed.  Pyatt v. Brown (In re Pyatt), 348 B.R. 783 (B.A.P. 8th Cir. 2006).  The trustee appeals, and we affirm.

       On October 4, 2004 Pyatt filed his petition for bankruptcy.  He stated that he had 15 or fewer creditors and debts in an amount between $0 and $50,000, reported his yearly income as about $15,000, and claimed two unmarried dependents.  On his schedule of personal property Pyatt indicated that the value of what he owned was $7,470.  His personal property consisted mainly of two cars: a Ford E-150 worth $750

_____

       [1]The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota; the Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska; and the Honorable Jerry W. Venters, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

and a Dodge minivan valued at $6,000. Pyatt also reported that he had $300 in a checking account at Southern Commercial Bank.

At the first meeting of Pyatt's creditors on November 8, trustee Tracy Brown discovered that Pyatt actually had $1,938.76 in the bank account on the date he filed for bankruptcy. Several checks written to creditors before he filed his petition had not been processed as of that date; they were honored after filing. Since Pyatt reported he had $300 in the account, he had apparently subtracted the amount of the outstanding checks in order to value his account on the date of filing. No one has suggested that he fraudulently or intentionally misrepresented the balance in his checking account.

In November 2004 Brown wrote to Pyatt, asking him to turn over $1,938.76 to the estate. When he did not comply with the trustee's demand, Brown invoked the turnover provision of the bankruptcy code, 11 U.S.C. § 542(a), and filed a motion to compel turnover on March 30, 2005. The bankruptcy court concluded that because the assets represented by the checks were still in Pyatt's account as of the date of his bankruptcy filing, the trustee was allowed to compel turnover under § 542(a).

Pyatt appealed to the bankruptcy appellate panel which reversed. The panel majority concluded that the bankruptcy trustee was in a better position to recover funds paid out by a bank to third parties after the debtor's filing. That is because only the trustee is authorized by the bankruptcy code to avoid postpetition transfers. See 11 U.S.C. § 549 (trustee may avoid unauthorized transfer occurring after commencement of case). If the trustee were to recover the transferred funds, the claims paid by the checks could be reinstated and the recovered funds could be distributed equally among all creditors. The concurring opinion disagreed that the trustee is in a better position to collect property of the estate, for the debtor is able to prevent loss to the estate, but it pointed out that § 542(a) does not authorize the

-3-

procedure used by Brown because the debtor no longer had control over the funds at the time she demanded them.

Trustee Brown appeals. She argues that because the funds in question were still in Pyatt's bank account on the date he filed bankruptcy, he was obligated to produce them for the estate. When he failed to do so, she had the right under § 542(a) to compel him to turn them over even though the checks had been honored and the funds disbursed. The trustee contends that failure to affirm the bankruptcy court would limit a trustee's ability to recover funds for the bankruptcy estate and impede its efficient administration. Trustee's amici[2] point out that her motion to compel turnover sought the value of the property, not the property itself. Pyatt was therefore required to turn over the amount of money in his bank account on the filing date.

Pyatt responds that § 542(a) codifies the turnover rules in effect before the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2595. Under those rules a trustee could only seek the turnover of funds which were currently in the possession of a debtor. He argues that he cannot be compelled to turn over money he no longer possesses. Debtor's amicus emphasizes that an account holder is the creditor of the bank and that nothing in the bankruptcy code requires debtors to collect all debts owed to them at the time they file for bankruptcy. Amicus further contends that Brown has other more appropriate statutory tools at her disposal in order to recover the funds transferred by the checks.

The facts here are undisputed and we face only questions of law. Like the bankruptcy appellate panel, we review the bankruptcy court's interpretation of the bankruptcy code de novo. In re Farmland Indus., Inc., 397 F.3d 647, 650 (8th Cir. 2005).

---

[2]The trustee's amici are the National Association of Bankruptcy Trustees and seven individual bankruptcy trustees. The National Association of Consumer Bankruptcy Attorneys filed an amicus brief supporting Pyatt.

-4-

The turnover provision of the code reads in pertinent part:

> [A]n entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). By referring to § 363, a section which authorizes the trustee to "use, sell, or lease . . . property of the estate," the drafters of § 542(a) made it clear that the turnover obligation applies to property of the estate. Property of the estate is defined by 11 U.S.C. § 541(a)(1) as "all legal and equitable interests of the debtor in property as of the commencement of the case." Pyatt had a legally recognized interest in his checking account when he filed for bankruptcy, and "checking account balances become 'property of the estate' once a bankruptcy petition is filed." Franklin v. Kwik Cash of Martin (In re Franklin), 254 B.R. 718, 721 (Bankr. W.D. Tenn. 2000). We agree with the trustee that the funds transferred by the checks are property of the estate.

Pyatt had control over the funds before the checks were honored, for under the Uniform Commercial Code an account holder has a right to stop payment of a check at any time before a check is honored. See U.C.C. § 4-403(a). Only when a check is honored does the bank have a right to charge a debtor's account. Id. § 4-401. Under the bankruptcy code a "transfer" of a check occurs when the drawee bank honors the check, not when the payee receives it. Barnhill v. Johnson, 503 U.S. 393 (1992). Anytime before the checks were honored, the funds represented by those checks were within the "possession, custody, or control" of Pyatt.

At the time the trustee's motion to compel turnover was filed, however, the checks had already been honored, and Pyatt then lacked "possession, custody, or control" of the funds. He argues that a trustee should not be able to compel a debtor

to turn property over when he no longer has control of it. The trustee disagrees, contending that a motion to compel turnover may properly be brought if a debtor had control over property when the bankruptcy petition was filed or at any time afterward. According to the trustee, it makes no difference that Pyatt no longer had control of the funds at the time of the turnover motion.

Here, both the debtor and the debtor's payees had "possession, custody, or control" of the funds at some point after the bankruptcy petition was filed. Under the trustee's reading of the provision, the trustee could proceed both against the debtor and against the payees and obtain double satisfaction. The code's drafters apparently did not think it necessary to prevent the trustee from obtaining double satisfaction under § 542(a). Cf. 11 U.S.C. § 550(d) (prohibiting double satisfaction in avoidances under §§ 544, 545, 547-549, 553(b), and 724(a); no mention of § 542(a)). The absence of such a prohibition suggests that the drafters did not intend to authorize a trustee to proceed under § 542(a) against everyone who may have had control over property of the estate at some point after the petition was filed.

Relying on the statutory phrase "possession, custody, or control, *during the case*," the Fourth Circuit has concluded that any entity controlling property of the estate at some point after the bankruptcy case begins may be the subject of a motion to compel turnover. See In re Shearin, 224 F.3d 353, 356 (4th Cir. 2000).[3] To focus on the phrase "during the case" without acknowledging the other language in § 542(a) would be misguided. See, e.g., Dolan v. U.S. Postal Serv., 126 S. Ct. 1252, 1257

---

[3]Three years before its Shearin decision, the Fourth Circuit had held that "[p]resent possession, either actual or constructive, of the property or its identifiable proceeds, by the person from whom its turnover is sought, is required for recovery under this section." Hager v. Gibson, 109 F.3d 201, 210 (4th Cir. 1997), citing Maggio v. Zeitz (In re Luma Camera Serv., Inc.), 333 U.S. 56, 64 (1948). In his partial dissent Judge Wilkins objected that the panel majority had improperly ignored Hager. See 224 F.3d at 358-59.

(2006) (proper interpretation of single phrase depends on whole statutory text). The language of § 542(a) imposes an obligation on any entity other than a custodian who comes into "possession, custody or control" of property of the estate after the bankruptcy petition is filed to deliver the property to the trustee. It says nothing, however, about whether that obligation continues after custody or control ceases, nor does it specify whether an entity which lacks control may properly be subject to a motion to compel turnover. The language of adjacent provisions in the bankruptcy code (such as §§ 544, 545, 547, 548, and 549) expressly supplies the trustee with rights and remedies. See, e.g., 11 U.S.C. § 549(a) ("[T]he trustee may avoid a transfer of property of the estate . . . ."). In contrast, the text of § 542(a) does not directly address what turnover remedies a trustee possesses. Instead, it prescribes a duty for other entities to "deliver to the trustee" and "account for" certain property. Because the text of § 542(a) does not identify the turnover rights of a bankruptcy trustee, we must look elsewhere in order to discern their scope.

Precode practice suggests that § 542(a) permits a trustee to compel turnover only from entities which have control of property of the estate or its proceeds at the time of the turnover demand. Precode practice is relevant in construing the bankruptcy code. See Dewsnup v. Timm, 502 U.S. 410, 419-20 (1992). It is especially instructive when interpretation of a "judicially created concept" is at issue, Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 501 (1986), and turnover proceedings were an uncodified creation of the courts before enactment of the current code.

The leading case on pre 1978 turnover proceedings is Maggio v. Zeitz (In re Luma Camera Service, Inc.), 333 U.S. 56 (1948). There, the president of a bankrupt enterprise was ordered to turn over property which he did not have. He was jailed for contempt when he did not comply with the order. The Supreme Court held that the president was not a proper defendant in a turnover action, for turnover proceedings are permissible "only when the evidence satisfactorily establishes the existence of the

property or its proceeds, *and possession thereof by the defendant at the time of the proceeding*." Id. at 63-64 (emphasis added). The use of a turnover remedy was inappropriate "if, at the time it is instituted, the property and its proceeds have already been dissipated." Id. at 64. Precode practice thus required control of the property at the time the motion to compel turnover was brought.

The trustee's amici argue, however, that § 542(a) does not preserve the Maggio rule because it allows the trustee to demand "the value" of the property instead of the property itself. If present possession of the property were required they contend, § 542(a) would not allow a trustee to demand turnover of anything but the property itself. This argument overlooks the fact that by authorizing a turnover proceeding against a debtor who had control "of the property *or its proceeds*," 333 U.S. at 63 (emphasis added), Maggio allowed the estate to recover the liquidated value of property. Thus under both precode practice and current law, if a debtor transfers property of the estate and receives value for it, a trustee may compel him to turn over the value of the property because he still has control over the proceeds of the property.

The trustee finally argues that our interpretation of the statute renders § 542(c) superfluous. Section 542(c) provides that an entity which lacks actual knowledge or notice of the bankruptcy case is allowed to transfer property of the estate. The trustee characterizes § 542(c) as "an affirmative defense" to a turnover action. Such a defense, the trustee argues, would not be necessary if an entity had to possess property of the estate before a trustee could initiate an action to compel turnover. This argument incorrectly assumes that § 542(c) carves out an exception to the possible universe of defendants in a turnover proceeding, but the function of § 542(c) is to limit the turnover *duty* created in § 542(a), rather than to limit the possible defendants in a turnover proceeding. Whether or not an entity happens to be exempted under § 542(c) from the duty to turn over property of the estate, both the bankruptcy code and precode practice dictate that an entity lacking present possession of property cannot be the subject of a motion to compel turnover. An entity can thus fall outside the

-8-

exemption of § 542(c) and be subject to the turnover duty, but still not be a proper defendant in a turnover proceeding. Although Pyatt would have had the duty to turn over all the money in his checking account before his checks were honored, the trustee cannot now compel him to turn over property which is no longer within his control.[4]

The trustee also relies on In re USA Diversified Products, Inc., 100 F.3d 53 (7th Cir. 1996). There the Seventh Circuit said that a defendant in a turnover proceeding did not have to possess property of the estate for a trustee to compel its turnover. The court was concerned that if present possession were required, "the possessor . . . could thwart the demand simply by transferring the property to someone else." Id. at 56. This concern can be addressed using 11 U.S.C. § 549, which gives the trustee the power to avoid postpetition transfers of property of the estate. Here in fact, Brown may invoke § 549 in order to proceed against the payees of the checks and bring the transferred funds back into the administration of the estate. Moreover, a trustee who follows Fed. R. Bankr. P. 2015(a), which directs a trustee "as soon as possible" after a bankruptcy filing to notify "every entity known to be holding money or property subject to withdrawal or order of the debtor, including every bank, savings, or building and loan association," would learn if an account balance reported by a debtor is inaccurate. This notification would trigger 11 U.S.C. § 542(b) which provides that "an entity that owes a debt that is property of the estate . . . shall pay such debt to, or on order of, the trustee." That provision would obligate the bank to turn over the full amount of the checking account to the trustee, since a bank account is a debt the bank owes to the depositor. Brown thus has the power to return the funds to the estate.

Accordingly, the judgment of the bankruptcy appellate panel is affirmed.

_____

---

[4]11 U.S.C. § 549(a)(2)(A), which gives a trustee the power to avoid a postpetition transfer authorized by § 542(c), is further evidence that the § 542(a) turnover obligations are distinct from a trustee's rights. For even though such a transfer is exempted from the turnover duty, the trustee nevertheless has the power to avoid the transfer.