# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3201

_____

In re: Vera T. Welte Testamentary Trust

*Debtor*

------------------------------

The Security National Bank of Sioux City, IA, as Personal Representative of the
estate of Roger Rand

*Appellee*

v.

Vera T. Welte Testamentary Trust

*Appellant*

Carol Dunbar

*Trustee*

_____

No. 22-3332

_____

In re: Vera T. Welte Testamentary Trust

*Debtor*

------------------------------

The Security National Bank of Sioux City, IA, as Personal Representative of the estate of Roger Rand

*Appellant*

v.

Vera T. Welte Testamentary Trust

*Appellee*

Carol Dunbar

*Trustee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: November 16, 2023
Filed: March 1, 2024

_____

Before COLLOTON, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In this bankruptcy matter, the Vera T. Welte Testamentary Trust contests the enforceability of dragnet clauses within mortgages used to secure loans funding Frank Welte's farming operations. The Estate of Roger Rand—a creditor—believes the clauses are enforceable. After the parties twice litigated that dispute, the Iowa Court of Appeals and the United States Bankruptcy Court for the Northern District of Iowa reached conflicting conclusions. Following an appeal of the bankruptcy court's order, the United States District Court for the Northern District of Iowa gave preclusive effect to the judgment of the Iowa Court of Appeals concerning the

enforceability of the clauses and the amounts owed thereunder. Now, the Trust and the Estate both appeal the district court's order, each asserting various points of error. Because we lack jurisdiction over the appeal, it must be dismissed.

I.

Frank Welte is the sole beneficiary of the Vera T. Welte Testamentary Trust. His brother, Claire Welte, is the trustee. The Trust's primary asset is 160 acres of farmland that were leased to Frank during the period of time at issue in this case. To finance his farming operations, Frank borrowed money from Roger Rand, another Iowa farmer. To secure the loans made to Frank, Claire, as trustee, signed mortgages pledging the Trust's property as security. Despite executing promissory notes which stated a principal amount, Frank borrowed more money than was reflected in them. Moreover, the mortgage documents—which Claire did not read before signing—contained dragnet clauses,[1] which secured not only the amount owed on the corresponding note, but all other then-existing obligations, as well as future obligations. And according to Claire, he assumed that he could only validly mortgage the Trust's *income*, not its property.

After Rand's death in 2016, and after "problems arose with Frank's repayments," Rand's Estate[2] initiated an Iowa state court foreclosure action against the Trust's farmland pledged as security for the loans. R. Doc. 1, at 7. The Estate named Frank as a defendant in his personal capacity and Claire in his capacity as trustee, among others. Eight days before trial, the Trust filed for chapter 12 bankruptcy. The bankruptcy court stayed the foreclosure action as to Claire, the

---

[1]Dragnet clauses—also known as Mother Hubbard clauses—are clauses "stating that a mortgage secures all the debts that the mortgagor may at any time owe to the mortgagee." Mother Hubbard clause, Black's Law Dictionary (11th ed. 2019).

[2]The Estate is now personally represented in this matter by Security National Bank of Sioux City, Iowa. For ease, we refer to the Estate throughout the opinion.

trustee, but the foreclosure action proceeded to trial against the remaining defendants.

Meanwhile, in the bankruptcy proceedings, the Estate filed a proof of claim and a motion to dismiss the Trust's chapter 12 petition. The motion to dismiss alleged that the Trust was an ineligible debtor because it was not a business trust as required by chapter 12. The Trust objected to the Estate's proof of claim on October 9, 2019.

Soon after, on October 16, 2019, the Iowa state court issued its ruling in the foreclosure action. The parties had disagreed whether the dragnet clauses in the mortgage documents secured the loans made to Frank in excess of the face amount of the promissory notes. The Iowa state court ruled that they did, and further ruled that the Estate was entitled to over $3 million.

One month after the Iowa state court ruling in the foreclosure action, the bankruptcy court held a hearing on the Estate's motion to dismiss. Its April 2021 ruling noted, but did not address, the Iowa state court foreclosure action. In tension with the conclusion of the Iowa state court, the bankruptcy court held that, while the mortgages were enforceable against the Trust under Iowa law, the dragnet clauses were not, because Claire lacked knowledge of the excess amounts loaned to Frank. Relying on the Trust's certified public accountant's opinions and its own conclusion as to the dragnet clauses, the bankruptcy court concluded that the Trust no longer owed a debt to the Estate and that the Estate therefore had no pecuniary interest in the bankruptcy proceedings. Accordingly, the bankruptcy court held that the Estate lacked standing to assert its motion to dismiss and granted the Trust's objection to the proof of claim.

Not long after the bankruptcy court's ruling, the Iowa Court of Appeals affirmed the state court decision, concluding that "the [Iowa state] district court properly applied the dragnet clause and determined the proper amount owed by the

-4-

appellants." Sec. Nat'l Bank of Sioux City v. Welte, 965 N.W.2d 202, 2021 WL 2453107, at *6 (Iowa Ct. App. 2021) (unpublished table decision).

The Estate timely appealed the bankruptcy court's decision to the United States District Court for the Northern District of Iowa. After the Estate asked the district court to take judicial notice of the Iowa Court of Appeals' decision, the district court ordered several rounds of briefing on whether, among other things, the Court of Appeals decision should be given preclusive effect. In its briefs, the Estate also asserted the same claim raised in its motion to dismiss before the bankruptcy court, namely, that the Trust was an ineligible debtor under chapter 12. In its memorandum opinion and order, the district court held, among other things, that the Iowa Court of Appeals' conclusion regarding the enforceability of the dragnet clauses and the amounts owed under the promissory notes was entitled to preclusive effect. It did not reach the Estate's arguments that the Trust was an ineligible debtor and instead remanded the case to the bankruptcy court for further proceedings.

The Trust now appeals the district court's order, alleging that the district court erred in (1) raising issue preclusion *sua sponte*, (2) giving a state court ruling preclusive effect in a bankruptcy case which the Trust asserts involved materially different issues, and (3) denying the Trust the benefits of the automatic stay. The Estate cross-appeals, alleging that the district court erred by failing to find that the Trust is an ineligible debtor under chapter 12. The Estate also moves to dismiss the Trust's appeal for a lack of jurisdiction, asserting that the district court's order is not a final, appealable order. Since our jurisdiction is a "threshold matter" that precedes the merits of an appeal, we must first address the Estate's motion to dismiss. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

II.

The Estate alleges that we lack jurisdiction to consider this appeal because the district court's order is not "final" for the purposes of 28 U.S.C. § 158(d)(1). The Estate asserts that there is more for the bankruptcy court to do on remand than simply

execute the district court's order. Under 28 U.S.C. § 158(d)(1), our jurisdiction over bankruptcy appeals is limited to "final decisions, judgments, orders, and decrees" of the district courts or Bankruptcy Appellate Panel (BAP). This appellate jurisdiction is more circumscribed than the district courts' or the BAP's. In re M & S Grading, Inc., 526 F.3d 363, 368 (8th Cir. 2008). Unlike the district courts or BAP, "our review is limited to final orders." Id.; In re Farmland Indus., Inc., 397 F.3d 647, 649 (8th Cir. 2005) ("[T]he BAP's jurisdiction is not limited to final orders."); see also In re Woods Farmers Coop. Elevator Co., 983 F.2d 125, 126 (8th Cir. 1993) (noting "the jurisdictional mess that results when parties to a complex bankruptcy proceeding ignore the final order requirement of 28 U.S.C. § 158(d)").

"We apply a broader, more flexible concept of finality in bankruptcy cases than we do in nonbankruptcy cases." Ritchie Special Credit Invs., Ltd. v. U.S. Tr., 620 F.3d 847, 852 (8th Cir. 2010). To determine the finality of an order under § 158(d)(1), we ask whether "'it finally resolves a discrete segment of [the bankruptcy] proceeding,' that is, a 'relevant judicial unit' of the proceeding." Farmland, 397 F.3d at 650 (citation omitted).

> To decide that pragmatic question, we examine . . . "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; [and] (3) the extent to which a later reversal on that issue would require recommencement of the entire proceeding."

Id. (citation omitted). Further, we have explained that "a district court decision involving remand normally will not be considered final" since "a decision requiring remand to the bankruptcy court often anticipates further judicial activity that is likely to affect the merits of the controversy." In re Vekco, Inc., 792 F.2d 744, 745 (8th Cir. 1986). If the remanding order leaves the bankruptcy court with only "purely mechanical or ministerial task[s]," it is more likely to be final. In re Popkin & Stern, 289 F.3d 554, 556 (8th Cir. 2002). "An order is ministerial and final if it effectively resolves the merits, and the task on remand is 'unlikely to generate a new appeal or

to affect the issue that the disappointed party wants to raise on appeal.'" In re Roussel, 769 F.3d 574, 577 (8th Cir. 2014) (citation omitted).

The first factor—whether the order leaves the bankruptcy court nothing to do but execute the order—strongly suggests that the district court's order is not final. Here, remand to the bankruptcy court anticipates further judicial activity. At the very least, the bankruptcy court will have to apply the district court's conclusion that the Iowa Court of Appeals' decision has preclusive effect with respect to the dragnet clauses and the amounts owed under the promissory notes. That will almost certainly require the bankruptcy court to then address the Estate's motion to dismiss, which alleges that the Trust is not an eligible debtor under chapter 12 because it is not a business trust. These tasks are hardly "mechanical or ministerial" and may well "generate a new appeal." Popkin, 289 F.3d at 556 (citation omitted); see also Roussel, 769 F.3d at 577 (holding that outstanding tasks were more than ministerial because "remand leaves the dischargeability of attorney fees to the bankruptcy court, requiring factual and legal analysis").

Resisting this conclusion, the Trust argues that "[t]here is no other action the Bankruptcy Court can take that would affect the merits of the controversy because there were no other instructions to the Bankruptcy Court to use its discretion or make additional factual findings." But that ignores the consequences of the district court's order. The Trust itself recognizes that the bankruptcy court will now have to address the Estate's motion to dismiss—a motion that will "affect the merits of" the underlying bankruptcy case because it might end it. Vekco, 792 F.2d at 745.

Relying on our decision in In re Nicolaus, 963 F.3d 839 (8th Cir. 2020), the Trust also argues that the district court's order is final because it definitively disposed of the Trust's objection to the Estate's proof of claim. But Nicolaus is distinguishable. There, we held that the bankruptcy court's dismissal of the objection to the proof of claim for lack of personal jurisdiction rendered its order final: "once the bankruptcy court decided that it could not consider Nicolaus's objection because he never properly served it [on the Internal Revenue Service], the

-7-

discrete dispute ended and there was nothing left for the court to do." Nicolaus, 963 F.3d at 842. That is a far cry from this case, where the district court's order left much for the bankruptcy court to do on remand: again, the bankruptcy court will have to apply the district court's conclusion that the Iowa Court of Appeals' decision has preclusive effect with respect to the dragnet clauses and the amounts owed under the promissory notes, and then address the Estate's motion to dismiss. Woods Farmers Coop., 983 F.2d at 127 ("[A]s we have repeatedly noted, a district court's remand order is not final for purposes of § 158(d) if it 'anticipates further judicial activity that is likely to affect the merits of the controversy.'" (citation omitted)).

As for the second and third factors—"the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief" and "the extent to which a later reversal on [the] issue would require recommencement of the entire [bankruptcy] proceeding"—neither the Trust nor the Estate meaningfully develop arguments. Farmland, 397 F.3d at 650 (citation omitted). In passing, the Trust argues that its "rights" are substantially affected by the district court's order, and that the district court's order may never receive appellate review if we do not immediately exercise jurisdiction. Although we are not obliged to consider this perfunctorily raised, undeveloped argument, United States v. Kirk, 528 F.3d 1102, 1104 n.2 (8th Cir. 2008), it does not change our conclusion regarding the "pragmatic question" of the district court's order's finality, Farmland, 397 F.3d at 650. The Trust does not explain its prognosis, and it offers no discernible reason why the issues addressed in the district court's order will *inevitably* evade appellate review. Finally, the Trust argues judicial economy will be aided by taking the appeal now, rather than later. But that cuts squarely against its concession that the Estate's motion will have to be addressed on remand and that it "may end the entire bankruptcy proceeding." Judicial economy would be aided if the bankruptcy court took up such a motion at an earlier stage of the proceedings.

Because the district court's order leaves much for the bankruptcy court to do on remand, the district court's order is not "final" under 28 U.S.C. § 158(d)(1). We therefore lack jurisdiction over the appeal and cross-appeal.[3]

## III.

For the foregoing reasons, we grant the Estate's motion to dismiss the appeal for lack of jurisdiction. We likewise dismiss the cross-appeal.

_____

[3]We end with a suggestion that was admittedly not briefed or argued by either party: we know of no reason why the decision of the Iowa Court of Appeals would not be a binding statement of Iowa law. See In re Sears, 863 F.3d 973, 978 (8th Cir. 2017) (explaining that we apply state law to resolve contractual defenses to proofs of claim); Travelers Prop. Cas. Ins. Co. of America v. Nat'l Union Ins. Co. of Pittsburg, 621 F.3d 697, 707 (8th Cir. 2010) ("In applying state law, . . . [w]hen the state's highest court has not spoken, . . . [w]e may look to decisions of the state's intermediate courts."); Wong v. Wells Fargo Bank N.A., 789 F.3d 889, 897 (8th Cir. 2015) ("It is a well-recognized rule that federal courts may not reject a state court of appeals decision solely because a state's highest court has not decided the matter.").