# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2723

_____

| | | |
|---|---|---|
| Pearson Education, Inc.; Cengage Learning, Inc.; The McGraw-Hill Companies, Inc., | * * * * | |
| Appellants, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| Joel Thomas Almgren, | * * | |
| Appellee. | * | |

_____

Submitted: March 14, 2012
Filed: July 13, 2012

_____

Before MURPHY and GRUENDER, Circuit Judges, and ROSS,[1] District Judge.

_____

GRUENDER, Circuit Judge.

Textbook publishers Pearson Education, Cengage Learning, and The McGraw-Hill Companies (collectively, "the publishers") appeal the orders of the

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, sitting by designation.

bankruptcy court[2] striking their demand for a jury trial on the amount of damages and denying an award of attorney's fees with respect to their successful copyright infringement claims against the bankruptcy estate of Joel Almgren.  For the reasons discussed below, we affirm.

## I.    Background

Almgren, in the course of pursuing a master's degree in business administration at Augsburg College in Minneapolis, obtained unlicensed copies of the instructor's solutions manuals for some of his textbooks through sources on the internet.  After using the unlicensed manuals for his school work, he decided to make money by obtaining and selling additional solutions manuals himself.  He contacted each of the appellant publishers in this case and represented himself as an Augsburg professor in need of solutions manuals.  The publishers provided the manuals, and Almgren sold them through the same websites from which he had originally obtained such manuals himself, realizing about $5,000 in gross profits.

Textbook publishers routinely police the internet for trafficking of unlicensed copies of their solutions manuals, and it took only about a month for the publishers in this case to identify Almgren.  Rather than initially contacting him with a cease and desist letter, the publishers filed a copyright infringement suit in federal district court in the Southern District of New York, served process on Almgren, and sought, as the bankruptcy court found, to "make an example of" him through litigation.  Almgren initially perjured himself by claiming in an affidavit and a deposition that a roommate had contacted the publishers and sold the manuals, but he eventually recanted and admitted his actions.

---

[2]The Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

The costs of participating in the litigation quickly rendered Almgren insolvent, and he filed for Chapter 7 bankruptcy protection in the District of Minnesota. The publishers filed proofs of claim and initiated an adversarial proceeding in the bankruptcy court, seeking a declaration that any damages owed by Almgren on their copyright claims were non-dischargeable in bankruptcy. After striking the publishers' demand for a jury trial, the bankruptcy court made a finding of willful infringement but nevertheless awarded the minimum $14,250 in statutory damages, deemed non-dischargeable in bankruptcy.[3] The bankruptcy court also denied the publishers' motion for more than $90,000 in attorney's fees, reasoning that the publishers could have caused Almgren to cease his activities without spending $90,000 in litigation. The publishers appealed the decision to the district court,[4] and the district court affirmed, finding that the publishers waived any right to a jury trial on copyright liability and damages by filing proofs of claim in the bankruptcy proceeding and that the bankruptcy court relied on appropriate factors in denying an award of attorney's fees. The publishers now appeal both issues.

## II.    Discussion

"As the second court of appeal in a bankruptcy case, we apply the same standard of review as the District Court, reviewing the Bankruptcy Court's legal

---

[3]A copyright owner may elect to recover statutory damages, rather than actual damages and additional profits of the infringer, "in a sum of not less than $750 or more than $30,000" for each copyright infringed. *See* 17 U.S.C. § 504(c)(1). If the copyright owner proves that the infringement was willful, the maximum available amount of statutory damages increases to $150,000 per copyright infringed. *See id.* § 504(c)(2). In this case, the district court awarded damages at the minimum of $750 for each of the nineteen copyrights infringed by Almgren, resulting in the $14,250 award.

[4]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

conclusions de novo and its findings of fact for clear error." *In re Usery*, 123 F.3d 1089, 1093 (8th Cir. 1997).

### A.    *Jury trial*

The publishers contend that they had a right to have a jury determine the amount of their statutory copyright damages.  As a general matter, "[t]he right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to [a] copyright owner." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998).  In this case, however, the publishers relinquished their right to have a jury determine the amount of damages when they filed claims against Almgren's bankruptcy estate:

> [I]n cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control.  Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.

*Katchen v. Landy*, 382 U.S. 323, 337 (1966) (quoting *Barton v. Barbour*, 104 U.S. 126, 133-34 (1881)); *cf. Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57-58 (1989) (distinguishing *Katchen* where the petitioner had not submitted a claim to the bankruptcy court).

The Supreme Court further explained the applicability of this rule in *Langenkamp v. Culp*, 498 U.S. 42 (1990) (per curiam):

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy

-4-

court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. As such, there is no Seventh Amendment right to a jury trial.

*Id.* at 44-45 (internal citations omitted).

The publishers argue that this line of precedent is distinguishable because the action at issue here is the creditors' own action for non-dischargeability, rather than a trustee's action to recover a voidable preference to a creditor. We disagree. The Supreme Court's stated rationale in *Langenkamp* is not limited to preference actions, and the publishers fail to explain why a creditor's claim of non-dischargeability is any less "integral to the restructuring of the debtor-creditor relationship" than the preference action at issue in *Langenkamp*. *Id.* at 44. Our sister circuits that have addressed the issue have applied *Langenkamp* to non-dischargeability actions. *See In re CBI Holding Co.*, 529 F.3d 432, 466 (2d Cir. 2008) ("In *Langenkamp*, the Supreme Court held that if a creditor who has filed such a claim is met with an adversary proceeding, the resolution of which affects the equitable restructuring of debtor-creditor or creditor-creditor relations, then the creditor loses its right to a jury trial even with regard to traditional legal claims."); *In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir. 1997) (holding that a bankruptcy court ruling on a creditor's action for non-dischargeability "may also render a money judgment in an amount certain without the assistance of a jury" (quoting *In re Devitt*, 126 B.R. 212, 215 (Bankr. D. Md. 1991))); *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1249 (3d Cir. 1994) ("*Langenkamp* seems to formulate a bright-line rule, holding that creditors who file proofs of claim against the estate are not entitled to a jury trial on matters affecting the allowance of those claims."); *In re Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991) ("Applying the Supreme Court's teachings to this case, we conclude that Hallahan had

no Seventh Amendment right to a jury trial on his dischargeability claim" because "[d]ischargeability proceedings, like actions to recover preferential or fraudulent transfers, are core proceedings.").[5]

The publishers also contend that the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. ---, 131 S. Ct. 2594 (2011), casts doubt on the continued viability of *Katchen* and *Langenkamp*. We again disagree. In *Stern*, the Court held that a bankruptcy court, as a non-Article III court, lacked constitutional authority to enter final judgment on a counterclaim by the debtor against a creditor, even though the creditor had filed a claim in defamation against the bankruptcy estate, because "there was never any reason to believe that the process of adjudicating [the creditor's] proof of claim would necessarily resolve [the debtor's] counterclaim." 131 S. Ct. at 2617. The Court expressly distinguished *Katchen* and *Langenkamp* as cases in which resolution of the ensuing action was "part of the process of allowing or disallowing claims." *Id.* at 2616. Likewise, in this case, a determination of the amount of the damages award is part of the process of allowing or disallowing the publishers' claims for copyright infringement.

As a result, the bankruptcy court did not err in striking the publishers' demand for a jury trial on the amount of statutory damages associated with their non-dischargeability claim.

### B.    *Attorney's fees*

As part of the remedy in a copyright infringement action, "the court may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The trial

---

[5]While the Fifth Circuit has held that a creditor seeking a declaration of non-dischargeability is "entitled to a jury trial on the issues of liability and amount," *In re Merrill*, 594 F.2d 1064, 1068 (5th Cir. 1979), we note that *Merrill* was decided prior to both *Granfinanciera* and *Langenkamp*.

court's "equitable discretion" to award attorney's fees to a prevailing party under § 505 is "to be exercised in an evenhanded manner by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). We review for an abuse of that discretion, which occurs "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 650 F.3d 1139, 1152 (8th Cir. 2011) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)).

In this case, the publishers sought approximately $90,000 in attorney's fees, but the bankruptcy court found that an award of attorney's fees would be inappropriate because (1) the publishers likely could have stopped Almgren's conduct prior to any litigation, at minimal cost, with a simple cease-and-desist letter, (2) the publishers filed suit "in the busiest, largest, and furthest away court they could find" in an effort to scare Almgren, (3) the publishers resisted the bankruptcy court's efforts to encourage settlement before litigating the adversarial action, and (4) the publishers' spare-no-expenses litigation strategy was unreasonable in light of the absence of "any real damages." The publishers argue that the bankruptcy court abused its discretion by discounting their need to act forcefully to deter willful infringement by others and leaving them "at a financial loss from enforcing their rights against a willful infringer who purposely, and fraudulently, prolonged the litigation" by fabricating a story about a roommate using his name.

To be sure, the publishers were free to make an example of Almgren by litigating their claims against him fully, within the bounds of the statutory scheme provided by Congress; they were under no obligation to employ a minimum-impact

cease-and-desist strategy. However, the publishers never were guaranteed that the attorney's fees generated by their strategy of choice would be compensated. *See Fogerty*, 510 U.S. at 534 (rejecting a proposed construction of § 505 that would result in an automatic recovery of attorney's fees by the prevailing party). While a different court might have weighed the factors in this case differently, we cannot say that the bankruptcy court committed a clear error of judgment in finding that an award of attorney's fees would not "advance considerations of compensation and deterrence" in these "particular circumstances." *See id.* at 534 n.19. Accordingly, we affirm the denial of attorney's fees.

## III.   Conclusion

For the foregoing reasons, we affirm the orders striking the demand for a jury trial on the amount of damages and denying an award of attorney's fees.

_____