# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-1595

_____

In re: Interstate Bakeries Corporation

*Debtor*

------------------------------

Sean Deckard

*Appellant*

v.

Interstate Bakeries Corporation; J. Randall Vance, as Plan Administrator

*Appellee*s

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 20, 2012
Filed: January 25, 2013

_____

Before BYE, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Sean Deckard appeals the order of the district court[1] affirming the grant of summary judgment by the bankruptcy court[2] in favor of Interstate Bakeries Corporation ("Hostess")[3] on Deckard's claim for civil penalties for Hostess's failure to give notices required under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and the denial of attorney's fees. We affirm.

## I.    Background

At the times relevant to this appeal, Hostess provided an "employee welfare benefit plan" ("Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(1). Hostess served as the administrator of the Plan and retained CIGNA as a third-party claims administrator.[4] Deckard began employment with Hostess in May 2004 and commenced participation in the Plan in December 2004. COBRA requires an administrator to give each participant a notice of certain health insurance coverage rights upon the commencement of coverage. *See* 29 U.S.C. § 1166(a). Although Hostess routinely provided the required COBRA notices to employees at the time Deckard became a participant, Hostess, which was in the midst of a Chapter 11 bankruptcy reorganization, is unable to produce any witnesses or documentation to show that the notice was provided specifically to

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

[3]Interstate Bakeries Corporation changed its name to Hostess Brands, Inc. during the pendency of this case. For simplicity, we will refer to both Interstate Bakeries Corporation and Hostess Brands as "Hostess."

[4]While Deckard initially named J. Randall Vance as an additional defendant in his capacity as Plan administrator, on appeal he no longer contests that Hostess, rather than Vance, was the Plan administrator.

Deckard. As a result, for purposes of summary judgment, Hostess does not dispute that it failed to provide the required COBRA notice to Deckard.

Hostess notified Deckard that his employment was terminated on September 11, 2006, soon after Deckard was determined to be disabled under the Social Security Act. COBRA also requires an administrator to give each participant a notice of certain health insurance coverage rights upon a "qualifying event," such as the termination of the participant's employment. *See* 29 U.S.C. § 1166(a). Again, Hostess does not dispute that it failed to provide the required COBRA notice to Deckard.

Due to an apparent clerical oversight, Hostess did not process certain aspects of Deckard's termination for almost two years. During this post-termination period, Deckard continued to enjoy health care coverage under the Plan, paying no premiums but receiving about $19,000 in benefits through the Plan. On August 20, 2008, the Plan belatedly identified Deckard's status as terminated and cancelled his coverage retroactive to September 11, 2006. CIGNA attempted to recover, or "claw back," Plan benefits that had been paid to various health care providers on Deckard's behalf during the period of his post-termination coverage. In turn, the health care providers pursued reimbursement from Deckard.

In April 2009, Deckard filed an administrative claim in Hostess's long-running bankruptcy proceeding, stating a disputed claim for reimbursement for his medical expenses and penalties for Hostess's failure to provide the required COBRA notices. On May 28, 2009, Hostess reinstated Deckard's coverage under the Plan for the post-termination period of September 11, 2006 through February 1, 2009, the date on which Deckard had become eligible for Medicare health insurance coverage.[5]

---

[5]The obligation to provide continuing health care coverage under COBRA ends on the date that the covered individual becomes eligible for Medicare benefits. *See*

-3-

CIGNA returned the $2,441.83 it had recovered from Deckard's health care providers, and the health care providers refunded all but $229.97 of the $693.38 that they had collected from Deckard. On July 10, 2009, Hostess filed an objection to Deckard's administrative claim and initiated an adversary proceeding, seeking a declaration that Hostess had no remaining liability to Deckard. Deckard counterclaimed for civil penalties for the failure to give the required COBRA notices at the commencement of coverage and at the termination of his employment. Despite the eventual reinstatement of coverage, Deckard alleged that he suffered damages during the approximately six-month period in which his Plan coverage was revoked.

The bankruptcy court granted summary judgment to Hostess on Deckard's claim for civil penalties for the failure to provide COBRA notices at both his commencement of participation and termination of employment, reasoning that his damages after cancellation of his coverage were not "proximately or logically" connected to the lack of notice two years earlier and, even if they were, "the prejudice [Deckard] experienced [from the cancellation of coverage] was insignificant compared to the benefit he received from two years of uninterrupted free health care." The bankruptcy court also found that Hostess did not act in bad faith and that a civil penalty was unnecessary to promote compliance with ERISA, given the undisputed evidence that the tumult of Hostess's bankruptcy reorganization likely caused Hostess's inability to prove that the required COBRA notices were provided to Deckard. Finally, the bankruptcy court denied Deckard's motion for attorney's fees and costs without further analysis because Deckard's "substantive claims" failed.

Deckard appealed the bankruptcy court's decision to the district court, which affirmed. Deckard now appeals the denial of a civil penalty, arguing that the bankruptcy court erred by (1) considering the benefit to Deckard of receiving extended Plan coverage at no cost, (2) miscalculating the amount of premiums

29 U.S.C. § 1162(2)(D)(ii).

Deckard would have had to pay to maintain his coverage, (3) weighing the degree to which the lack of COBRA notices prejudiced Deckard, (4) holding that no liability can arise for a COBRA notice violation if the administrator continues to provide Plan benefits after the qualifying event, (5) ignoring the "purpose" of COBRA to prevent gaps in health care coverage, and (6) finding that Hostess acted in good faith. Deckard also appeals the bankruptcy court's holding that he did not achieve the degree of success necessary for an award of attorney fees.

## II.    Discussion

"As the second court of appeal in a bankruptcy case, we apply the same standard of review as the District Court, reviewing the Bankruptcy Court's legal conclusions de novo and its findings of fact for clear error." *Pearson Educ., Inc. v. Almgren*, 685 F.3d 691, 694 (8th Cir. 2012) (quoting *In re Usery*, 123 F.3d 1089, 1093 (8th Cir. 1997)). "We review issues committed to the bankruptcy court's discretion for an abuse of that discretion. *In re Farmland Indus., Inc.*, 397 F.3d 647, 650-51 (8th Cir. 2005). "The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *Id.* at 651.

### A.    Civil Penalty

It is undisputed that Hostess failed to provide two notices required by COBRA. ERISA provides that a plan administrator who fails to meet the COBRA notice requirements "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal . . . ." 29 U.S.C. § 1132(c)(1).[6]  "The purpose of this statutory penalty is to

---

[6]Although the statute recites a civil penalty of up to $100 per day, the amount has been adjusted to $110 per day.  *See* 29 C.F.R. § 2575.502c–1.

provide plan administrators with an incentive to comply with the requirements of ERISA and to punish noncompliance." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006) (citations omitted). "In exercising its discretion to impose statutory damages, a court primarily should consider 'the prejudice to the plaintiff and the nature of the plan administrator's conduct.'" *Id.* (quoting *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 948 (8th Cir. 1999)). "Although relevant, a defendant's good faith and the absence of harm do not preclude the imposition of the § 1132(c)(1)(A) penalty." *Id.*

First, Deckard argues that the bankruptcy court engaged in "an impermissible hindsight analysis" by weighing the benefit of receiving extended Plan coverage at no cost against the claimed damages from the lack of COBRA notice. Deckard's only cited authority for this argument, however, arose in a separate context and is no longer good law in any event. *See Geissal v. Moore Med. Corp.*, 114 F.3d 1458, 1464-65 (8th Cir. 1997) (discussing an employer's right to cancel COBRA benefits when a former employee is covered by another plan unless there is a "significant gap" in the coverage afforded under the other plan and holding that the existence of a gap should be determined based on "information available to the employer on the day of the COBRA election," rather than on "hindsight" analysis of medical expenses later incurred by the former employee), *rev'd*, 524 U.S. 74, 85-87 (1998) (abrogating the "significant gap" test as unfounded in statutory language). In the context of the issue at hand—determining whether a civil penalty is warranted under § 1132(c)(1)—it is well established that one of the primary considerations is the prejudice to the plaintiff caused by the failure to give the required COBRA notice. *See Starr*, 461 F.3d at 1040. The fact that Deckard received free, ongoing coverage under the Plan despite the lack of COBRA notice is plainly relevant to the degree of prejudice he suffered. As a result, it was not legal error for the bankruptcy court to consider that circumstance.

Second, Deckard challenges the bankruptcy court's factual findings with respect to the value of the coverage he received. The bankruptcy court found that, had Deckard exercised his COBRA rights upon termination, he would have had to pay $8,200 in premiums to maintain twenty-nine months of coverage through his Medicare eligibility date. Deckard contends that his actual savings in premiums was only $3,200, however, because (a) a collective bargaining agreement required Hostess, rather than Deckard, to pay the premiums during the first twelve months after termination of his employment, and (b) despite the later reinstatement of coverage, Deckard effectively had no coverage during the six months between August 28, 2008, when Hostess cancelled his coverage, and February 1, 2009, when he became eligible for Medicare.

Deckard's argument as to the accuracy of the potential $8,200 total premium over twenty-nine months does not demonstrate any abuse of discretion, however, because the bankruptcy court did not base its prejudice analysis on those figures. *See In re Farmland Indus.*, 397 F.3d at 651 ("The bankruptcy court abuses its discretion when it . . . *bases its order* on findings of fact that are clearly erroneous." (emphasis added)). In fact, the bankruptcy court accepted Deckard's argument with respect to the six-month period of no coverage, expressly rejecting Hostess's invitation to view those final months that were covered only retroactively by the Plan as a benefit to Deckard. As Deckard recommended, the bankruptcy court instead considered only the period until Hostess cancelled coverage, stating that "the prejudice [Deckard] experienced [from the cancellation of coverage] was insignificant compared to the benefit he received from two years [rather than twenty-nine months] of uninterrupted free health care." Regarding the first twelve months after Deckard's termination, the finding that he received "two years of uninterrupted free health care" in lieu of COBRA coverage is accurate regardless of whether that first year was rendered free by a collective bargaining agreement. Because the bankruptcy court did not base its

order on findings of fact that are clearly erroneous, there can be no abuse of discretion arising from the calculation of the $8,200 figure.[7]

Third, Deckard contends that the bankruptcy court should have given more weight to the damages he suffered. Deckard does not dispute the bankruptcy court's recitation of his evidence of damages in the summary judgment record:

1. Deckard avoided and postponed seeking medical attention that he could not afford.

2. Deckard suffered stress because he postponed medical care because of a lack of insurance coverage.

3. Deckard had to pay unsubsidized retail prices for prescription medications.

4. Deckard had to resort to less expensive, generic medications.

5. Deckard had to expend additional effort to obtain necessary medicines because his on-line pharmacy would not fill his prescriptions.

6. Deckard had to rely on others to obtain his medications for him.

7. Paying retail prices for Deckard's medications caused him stress.

8. Deckard suffered demands for payment by medical service providers, their collectors, and CIGNA's collectors.

_____

[7]In discussing whether Hostess acted in bad faith, the bankruptcy court also noted that, when Hostess reinstated Deckard's coverage, it chose not to pursue "the more than $8,000 in premiums Deckard would have had to pay for the health care coverage Deckard received." However, Deckard makes no argument that the good-faith finding depended on the precise value of the premiums Deckard would have owed.

9. Deckard's credit rating was adversely affected.

10. Financial demands from collectors and providers caused Deckard stress.

11. Deckard's providers were slow to refund money after reversal of the "claw backs" and, even then, the providers did not pay him interest on those refunds.

Deckard argues that other courts addressing circumstances similar to his have found prejudice sufficient to justify a penalty. For example, in *Fadalla v. Life Auto. Prods., Inc.*, No. 2:06-cv-02679, 2009 WL 3295369, at *3 (W.D. Tenn. Oct. 13, 2009), the court found a former employee and his family were prejudiced by a faulty COBRA notice "[d]espite Defendants' retroactive application of COBRA coverage and the reimbursement for [their] out-of-pocket medical expenses during their period of no coverage." Deckard contends that he, too, suffered prejudice despite Hostess's retroactive reinstatement of coverage and reimbursement. However, *Fadalla* actually illustrates a deficiency in Deckard's prejudice argument. The *Fadalla* court assessed a civil penalty of $55 per day on behalf of the employee's spouse because, during the period of no coverage, she "had an ectopic pregnancy, and, because she had no health insurance, several medical procedures were delayed by at least two weeks." *Id.* In contrast, however, the *Fadalla* court declined to assess a civil penalty on behalf of the employee's daughter, because although she "forwent an ear tube procedure due to lack of health insurance, . . . the only impact on [her] was the necessity for her to go on antibiotics, which caused no physical impact on her." *Id.*

Based on the evidence in the record here, Deckard's circumstances are analogous to the daughter in *Fadalla*, not the spouse. Deckard avers that he had to pay retail pharmacy prices and switch to generic medications during his no-coverage period, but the *Fadalla* court did not find that type of prejudice sufficiently severe to warrant a penalty. Likewise, although Deckard avers that he postponed medical care,

he offers no specific evidence as to what that medical care would have been or how the postponement resulted in a "physical impact" on him. *Id.* In the absence of any evidence that Deckard's postponement of medical care during his no-coverage period presented an increased risk such as the spouse in *Fadalla* faced, we cannot say that the bankruptcy court weighed the prejudice against him incorrectly with regard to his evidence of damages.

Moreover, of the several decisions cited by Deckard finding that evidence of uncovered medical expenses or financial hardship was sufficiently prejudicial to justify a penalty, none of those cases involved counterbalancing that prejudice against the benefit of a long period of continuing post-termination coverage at no cost. As a result, those decisions are only marginally instructive at best. Deckard directs us to no authority suggesting that the bankruptcy court's balancing of those factors was an abuse of its discretion.

Fourth, Deckard argues the bankruptcy court made an error of law by holding that no liability can arise for a COBRA notice violation if the administrator continues to provide Plan benefits after the qualifying event. *See* 26 C.F.R. § 54.4980B-4(c) (stating that, in order for an event such as termination of employment to qualify as one that triggers COBRA notice requirements, "a loss of coverage need not occur immediately after the event, so long as the loss of coverage occurs before the end of the maximum coverage period"). However, the bankruptcy court did not state categorically that no liability can attach in such a case. Instead, it recognized its discretion to award a civil penalty and properly considered circumstances such as "the prejudice to the plaintiff and the nature of the plan administrator's conduct" in making its determination. *See Starr*, 461 F.3d at 1040 (quoting *Kerr*, 184 F.3d at 948).

Fifth, Deckard argues that the denial of civil penalties in this case is at odds with the "purpose" of COBRA to prevent gaps in health care coverage. Whatever the

general purposes of COBRA may be, however, § 1132(c)(1) does not mandate a penalty in every case where a gap in health care coverage occurs, but rather it expressly reserves discretion to the court. We decline to impose a non-statutory requirement that mandates a penalty in every such case. *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220 (2002) ("[V]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the specific issue under consideration." (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993))).

Sixth, Deckard challenges the bankruptcy court's finding that Hostess acted in good faith. A finding of bad faith typically requires a "willful failure on [the plan administrator's] part to send the notice." *Starr*, 461 F.3d at 1040. Here, there is no dispute that Hostess's normal practice had been to provide the required COBRA notices to all employees, and there is no evidence that Hostess was aware it had failed to send a required notice to Deckard when it belatedly terminated his coverage. Deckard relies solely on Hostess's conduct in "clawing back" previously paid benefits, but Hostess, absent knowledge that its COBRA notice had been deficient, was allowed to recover any excess benefits it had paid under the terms of the Plan. About a month after Deckard filed a claim for an administrative expense asserting the failure to provide the required notices, Hostess rescinded the termination of coverage and repaid all benefits in full. On these undisputed facts, the bankruptcy court did not err in finding that Hostess acted in good faith.

For these reasons, we affirm the bankruptcy court's grant of summary judgment to Hostess on Deckard's claim for civil penalties for the failure to provide COBRA notices.[8]

---

[8]Because we affirm on the merits of Deckard's claim for civil penalties with regard to notice both at commencement of participation and termination, we need not address the bankruptcy court's alternative holding that Deckard's claim with regard to notice at commencement is barred by the statute of limitations. In addition, we

## B.     Attorney's Fees

Deckard contends that even if he is not entitled to recover civil penalties, an award of attorney's fees is appropriate. In an action for civil penalties under § 1132(c)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). As a threshold matter, "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. ---, 130 S. Ct. 2149, 2158 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). This threshold is met "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was "substantial" or occurred on a "central issue."'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688 n.9). Once the threshold is met, a court in exercising its discretion may then consider factors such as (1) degree of culpability or bad faith, (2) ability to satisfy an award of attorney's fees, (3) potential for deterring other persons acting under similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself, and (5) the relative merits of the parties' positions. *See id.* at 2158 n.8; *Starr*, 461 F.3d at 1041. We review the denial of attorney's fees for abuse of discretion. *Starr*, 461 F.3d at 1040.

Deckard challenges the bankruptcy's court's finding that he failed to meet the necessary threshold for success, arguing that he successfully (1) demonstrated Hostess's failure to provide the required COBRA notices and (2) obtained reinstatement of his coverage and reimbursement for his medical expenses, even if he did not prove an entitlement to recover civil penalties. To be sure, we previously

---

need not reach Hostess's alternative argument for affirmance that Deckard's claims, even if valid, would not qualify for administrative expense treatment.

have reversed a district court's denial of attorney's fees under § 1132(g)(1) where the claimant ultimately lost on the issue of whether civil penalties under § 1132(c)(1) were warranted, yet prevailed at trial on contested issues such as whether notices were sent, whether coverage should be reinstated, and whether medical expenses should be reimbursed. *See Starr*, 461 F.3d at 1041. Here, however, none of these intermediate issues were contested in the adversary proceeding on Deckard's § 1132(c)(1) claim. Instead, after Deckard filed his application for an administrative expense in Hostess's bankruptcy proceeding, Hostess reinstated Deckard's coverage, reimbursed his medical expenses, and even declined to seek any corresponding premiums. *Cf. Starr*, 461 F.3d at 1039 (affirming the award of "the amount of medical expenses incurred . . . less co-payments and premiums"). Similarly, Hostess conceded that the notices were not sent. We agree with the dissent that Deckard's decision to file an administrative expense claim with the bankruptcy estate may well have triggered the reimbursement; nevertheless, with regard to the issues actually in dispute in the subsequent adversary proceeding, Deckard failed to prevail on a single issue, and the bankruptcy court characterized his litigation arguments as "ludicrous." Therefore, we agree with the bankruptcy court that it could not "fairly call the outcome of the litigation some success on the merits" as required to award attorney's fees and costs to Deckard. *See Hardt*, 130 S. Ct. at 2158.

Accordingly, we affirm the bankruptcy court's denial of attorney's fees and costs to Deckard.

## III.  Conclusion

For the foregoing reasons, we affirm the bankruptcy court's grant of summary judgment to Hostess and the denial of attorney's fees.

BYE, Circuit Judge, dissenting.

I respectfully dissent from the decision to affirm the bankruptcy court's denial of Sean Deckard's claim for civil penalties against Hostess for the latter's failure to provide Deckard with statutorily mandated COBRA notices. In addition, I respectfully dissent from the decision to affirm the bankruptcy court's denial of Deckard's request for attorney's fees.

It is undisputed that Sean Deckard suffered a six-month gap in his health care coverage as a result of Hostess's conceded failure to comply with COBRA notice requirements. Avoiding a gap in medical coverage is the main purpose of the COBRA notice requirements. See Livingston v. S. D. State Med. Holding Co., Inc., 411 F. Supp. 2d 1161, 1169 (D.S.D. 2006) ("COBRA's purpose is to prevent gaps in health care coverage."); Simpson v. T.D. Williamson, Inc., 321 F. Supp. 2d 1240, 1245 (N.D. Okla. 2003) ("[T]he core purpose of COBRA . . . is to insure continued medical coverage [is] available to workers and their families who face changes in their lives."); Kytle v. Stewart Title Co., 788 F. Supp. 321, 323 (S.D. Tex. 1992) ("The whole purpose of COBRA is to prevent gaps in health care coverage.").

Under the summary judgment record considered by the bankruptcy court, it is also undisputed that Deckard was forced to forego treatment for his health issues during the gap in his health care coverage. Foregone or delayed medical treatment is one of the principle harms sought to be avoided by COBRA, and the presence of that factor alone constitutes sufficient prejudice to award statutory penalties. See Holford v. Exhibit Design Consultants, 218 F. Supp. 2d 901, 909 (W.D. Mich. 2002) (determining foregone health care treatments constitutes prejudice when a COBRA violation occurs); Fadalla v. Life Auto. Prods., Inc., No. 2:06-CV-02679, 2009 WL 3295369, at *3 (W.D. Tenn. Oct. 13, 2009) (awarding $55 per day in statutory penalties because "[p]laintiffs were without medical coverage for approximately three months and suffered some prejudice during that time. Mrs. Fadalla had an ectopic

-14-

pregnancy, and, because she had no health insurance, several medical procedures were delayed by at least two weeks" and finding prejudice "[d]espite Defendants' retroactive application of COBRA coverage and the reimbursement for Plaintiffs' out-of-pocket medical expenses during their period of no coverage."); cf. Marquez v. Drugs Unlimited, Inc., No. 08-2387, 2010 WL 1133808, at *10 (D.P.R. Mar. 22, 2010) (concluding plaintiff's need to "forgo some psychological treatment . . . presented a material issue of fact with regard to whether or not she was in fact prejudiced by Defendants' delay in informing her of her COBRA benefits").

In denying statutory penalties, the bankruptcy court essentially ignored the gap in health care coverage through which Deckard suffered and placed too much emphasis on Hostess's post-litigation reinstatement of health care coverage. In Holford, the court awarded a statutory penalty, disregarding an employer's after-the-fact "attempt[] to right the situation by offering to Plaintiff COBRA coverage retroactive to the effective date of her separation." 218 F. Supp. 2d at 905. The court stated that while the employer's "new-found knowledge and respect for COBRA" was "laudable [it] is not the true test for determining sanctions aimed at deterrence." Id. at 905 & n.2:

> As in this Court's criminal cases, many defendants express respect and allegiance to the laws of the land while their deeds are being weighed in the balances of justice. The legitimate goal of deterrence (which is the object of the civil fine provision applicable in this case) is to see that litigants will observe the same respect for the laws when the courts are afar off and their conduct is hidden.

Id. at 905 n.2.

In this case, there was abundant evidence that Hostess acted in bad faith before it got "caught," so to speak. Hostess's pre-litigation conduct included (1) its cancellation of Deckard's health benefits retroactive to September 2006 even though

-15-

the collective bargaining agreement (CBA) required it to provide Deckard benefits through September 2007; (2) its failure to even notify Deckard it was cancelling his coverage, leaving him to discover the cancellation when a prescription order was refused; (3) its attempts to "claw back" the health benefits it had provided Deckard from September 2006 through August 2008, even though it was obligated to cover some of those health benefits under the terms of the CBA; (4) its failure to assist Deckard in responding to collection efforts made by health providers and bill collectors after the retroactive cancellation of his insurance; (5) its failure to acknowledge its COBRA violations even after Deckard's mother brought the violation to its attention; and (6) its lack of evidence of record-keeping requirements to support the claim that its failure to provide COBRA notice was just an oversight rather than a blatant disregard for COBRA requirements. Thus, in my view, the bankruptcy court clearly abused its discretion by not giving enough weight to Hostess's pre-litigation conduct as evidence of its bad faith, and placing too much weight on the post-litigation damage control Hostess undertook after Deckard was forced to hire legal counsel and initiate litigation to assert his COBRA rights.

Even if we assume the bankruptcy court was within its discretion to deny the claim for civil penalties, the denial of Deckard's request for attorney's fees was plainly wrong and an abuse of discretion. In Starr v. Metro Systems, Inc., we held a district court abused its discretion in failing to award attorney's fees to a plaintiff who successfully proved a defendant's COBRA violation *notwithstanding* our affirmance of the district court's denial of the claim for civil penalties. 461 F.3d 1036, 1041 (8th Cir. 2006). In reversing the denial of attorney's fees, we discounted the COBRA defendants' success "in showing that they did not act in bad faith" for purposes of awarding civil penalties and instead focused on the COBRA plaintiff's "clear[] succe[ss] in establishing a meritorious claim that defendants failed to comply with COBRA's notice requirements." Id. Significantly, when making the critical distinction between success on a claim for civil penalties and success in proving the COBRA violation itself, Starr rejected the defendants' claim that the issue of "success

-16-

on the merits" should be considered a "toss-up" because "the defendants survived a motion for summary judgment." Id. We expressly stated the "defendants' survival of summary judgment deserves little, if any, weight as a showing of the relative merits." Id. In this case, Hostess had no choice but to concede at the summary judgment stage that it had violated COBRA, because there were simply no triable issues of fact with respect to that critical issue. In other words, the critical focus in determining "success on the merits" status for purposes of awarding fees in a COBRA case such as this is not whether a plaintiff successfully proves a claim for civil penalties, but whether a plaintiff successfully proves that COBRA's notice requirements were violated. Deckard clearly succeeded in establishing a meritorious claim that Hostess failed to comply with COBRA's notice requirements.

In addition, when considering whether Deckard succeeded on the merits for purposes of awarding fees, it is significant that Hostess reinstated Deckard's healthcare coverage only *after* Deckard initiated legal action. Although a voluntary change in the defendant's conduct cannot be considered for determining "prevailing party" status, see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 600 (2001), that principle has no application in determining "success on the merits" under 29 U.S.C. § 1132(g)(1). See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. __, 130 S.Ct. 2149, 2157 (2010) (specifically distinguishing Buckhannon for purposes of determining "success on the merits" under § 1132(g)(1)). Thus, I believe Hostess's reinstatement of coverage should also be considered part of Deckard's success on the merits, because Deckard's litigation was the catalyst in having his health coverage restored. See Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., __ F. Supp. 2d __, 2012 WL 4514526 at *10 (D. Md. Sept. 28, 2012) (discussing those cases which support application of the catalyst theory for awarding fees under § 1132(g)(1)).

For the reasons stated, I respectfully dissent.

_____

-17-