# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1408

_____

Bonnie Cole, Individually and as Next Friend of P.C., a Minor; Lyle Cole,
Individually and as Next Friend of P.C., a Minor

*Plaintiffs - Appellants*

v.

Trinity Health Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: September 8, 2014
Filed: December 15, 2014

_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

When Bonnie Cole[1] stopped working for Trinity Health Corporation ("Trinity Health"), the company failed to timely notify the Coles of their right to continuing

_____

[1]We refer to Bonnie Cole, her husband Lyle Cole, and their minor son P.C. collectively as "the Coles."

health care coverage, as it was required to do.  The Coles sought statutory damages, which may be awarded in the court's discretion after a violation of this notification requirement, but the district court[2] declined to award damages and granted summary judgment to Trinity Health.  We are asked to decide whether this decision was in error.  We find no abuse of discretion in the district court's denial of statutory damages and therefore affirm the grant of summary judgment.

I.

When Bonnie was a Trinity Health employee, she enrolled in an employer-sponsored group health plan with Blue Cross Blue Shield of Michigan ("Blue Cross"), for which Trinity Health served as plan administrator.  Lyle and P.C. enrolled as beneficiaries.  Bonnie later began a period of leave from Trinity Health, first under the Family and Medical Leave Act of 1993, and then under short-term disability leave.  Her short-term disability benefits expired June 8, 2011.  When they did, Bonnie requested long-term disability benefits.  While it considered this request, Unum, Trinity Health's long-term disability benefits provider, provisionally paid Bonnie's medical care claims under a "Reservation of Rights."  On October 18, 2011, however, Unum denied Bonnie's request but chose not to seek repayment of the provisional benefits it had provided.

Bonnie's termination date should have been June 8, 2011, the last day she qualified for benefits and was considered a Trinity Health employee.  But because of an error[3] her termination was not processed when Unum denied her long-term disability benefits request.  As a result, Bonnie, Lyle, and P.C. continued to receive Blue Cross health insurance benefits well into 2012.  Trinity Health finally

---

[2]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

[3]The record indicates only that "an error was made."

discovered its error and processed Bonnie's termination in late April and early May 2012. Righting itself, Trinity Health set Bonnie's termination date at June 8, 2011, but deemed her benefits retroactively terminated January 1, 2012. Although Trinity Health's system indicated that on May 8, 2012, the Coles were sent notice that their health care coverage had been terminated, Trinity Health later determined no notice was sent on that date.

The Coles were first alerted to their benefits change on June 1, 2012, when Lyle visited his physician and was told his family no longer had insurance. Bonnie contacted Blue Cross for clarification. On June 8, 2012, Blue Cross notified the Coles their benefits had been terminated effective January 1, 2012. The Coles later received a letter from Trinity Health, dated June 19, 2012, explaining that while Bonnie's coverage was terminated effective January 1, 2012, Bonnie first received notice of this termination June 8, 2012. After they learned their Blue Cross coverage had ended, the Coles were able to obtain health insurance through Lyle's employer. That coverage was made retroactively effective June 1, 2012.

While Trinity Health retroactively terminated Bonnie's benefits January 1, 2012, it failed to notify Blue Cross of Bonnie's termination until May 2012. The Coles thus received Blue Cross benefits through April 2012 and Blue Cross did not deny any of the Coles' claims based on termination of coverage until May 1, 2012. Blue Cross has not sought a refund of the claims it paid between January 1, 2012, and April 30, 2012. Beginning May 1, 2012, Blue Cross denied approximately $1,300 in claims. When Bonnie's short-term disability benefits expired on June 8, 2011, her portion of the insurance premium was $135.12 per two-week pay period and Trinity Health's portion was $405.37. Bonnie paid her last employee contribution during the pay period ending June 11, 2011.

In October 2012, the Coles filed this action against Trinity Health alleging that the company violated the Consolidated Omnibus Budget Reconciliation Act of 1985

("COBRA") by failing to notify them of their right to continuing health care coverage.[4] The district court declined to award the Coles statutory damages and granted summary judgment to Trinity Health. Specifically, the district court reasoned the Coles were not entitled to actual damages because the amount of their unreimbursed medical bills from May 2012 was less than the COBRA premiums they would have had to pay to maintain medical insurance. The district court also reasoned the Coles were not entitled to statutory penalties because "Trinity Health acted in good faith," "the Coles were not harmed or prejudiced by Trinity Health's tardy notice of their COBRA rights," and "the Coles were provided continued medical coverage for approximately eleven months after Bonnie's termination."

## II.

When a covered employee is terminated, COBRA requires plan administrators like Trinity Health to timely notify qualified beneficiaries of their right to continued health care coverage. See 29 U.S.C. §§ 1163(2), 1166(a)(4)(A), (c). The Employee Retirement Income Security Act of 1974 ("ERISA") provides that a plan administrator that fails to meet the COBRA notification requirement "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure . . . and the court may in its discretion order such other relief as it deems proper." Id. § 1132(c)(1); 29 C.F.R. § 2575.502c-1 (increasing maximum amount of civil penalty from $100 a day to $110 a day). "The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA and to punish noncompliance." Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006) (citations omitted).

---

[4]The Coles also claimed Trinity Health violated the Patient Protection and Affordable Care Act of 2010 ("ACA"). The Coles have not appealed the district court's grant of summary judgment to Trinity Health on their ACA claims.

We typically review summary judgment rulings de novo. <u>See</u> Fed. R. Civ. P. 56(a). Here, however, there is no dispute Trinity Health violated the COBRA notification requirement. The question before us, then, is whether the district court erred in declining to assess statutory damages.[5] Because this decision is left to the discretion of the district court, <u>see</u> 29 U.S.C. § 1132(c)(1), we review for abuse of discretion. <u>See</u> <u>Christensen v. Qwest Pension Plan</u>, 462 F.3d 913, 919 (8th Cir. 2006) ("We review the discretionary aspect of the court's decision not to assess a penalty for abuse of that discretion."); <u>see also</u> <u>Kwan v. Andalex Grp. LLC</u>, 737 F.3d 834, 848 (2d Cir. 2013) ("We review the District Court's determination that a plaintiff is not entitled to statutory penalties under 29 U.S.C. § 1132(c)(1) for abuse of discretion."). A district court abuses its discretion when it "rel[ies] on clearly erroneous factual findings," <u>Lester E. Cox Med. Ctr., Springfield, Mo. v. Huntsman</u>, 408 F.3d 989, 993 (8th Cir. 2005) (internal quotation marks omitted), or "makes an error of law." <u>Kerr v. Charles F. Vatterott & Co.</u>, 184 F.3d 938, 947 (8th Cir. 1999) (internal quotation marks omitted).

---

[5]Trinity Health argues we may alternatively affirm the district court's grant of summary judgment as to Lyle and P.C.'s claims because 29 U.S.C. § 1132(c)(1) permits only the plan participant, here Bonnie, to recover damages for a violation of 29 U.S.C. § 1164(a)(4). Other courts are divided on this issue. <u>Compare</u> <u>Wright v. Hanna Steel Corp.</u>, 270 F.3d 1336, 1344 (11th Cir. 2001) (participants only), <u>with</u> <u>Honey v. Dignity Health</u>, No. 2:12-cv-00416-MMD-GWF, 2014 WL 2765614, at *7-8 (D. Nev. June 16, 2014) (participants and beneficiaries). We have not addressed this issue directly, although the Coles contend our precedent implies beneficiaries may recover. <u>See, e.g.</u>, <u>Chestnut v. Montgomery</u>, 307 F.3d 698, 703-04 (8th Cir. 2002). We decline to address this issue here and assume for purposes of this appeal that Lyle and P.C. may recover as beneficiaries.

The Coles first challenge the district court's denial of actual damages.[6] The district court found the Coles' only damages were $1,307 in unreimbursed medical bills from May 2012. The Coles argue that the district court overlooked Lyle's unpaid claims from January and February 2012, and that it ignored the fact that they were without coverage during part of June 2012. As to Lyle's unpaid claims from January and February 2012, the Coles' argument is foreclosed by their admissions before the district court that (1) Blue Cross did not deny any claims they submitted based on termination of coverage until May 1, 2012, and (2) no documents were produced indicating Blue Cross sought a refund on any claims between January 1, 2012, and April 30, 2012. The Blue Cross statement of claims further indicates that Blue Cross paid Lyle's last claim from February 2012 and all of Bonnie's claims from January and February 2012, and that May 1, 2012, is the earliest Blue Cross denied payment for lack of active coverage. As to the period of time in June 2012, the Coles fail to identify any damages they incurred. Moreover, they later obtained coverage through Lyle's employer retroactively effective June 1, 2012. Thus the district court did not clearly err in finding the Coles' only damages were for $1,307[7] in unreimbursed medical bills.

The Coles also argue the district court erred in determining that the amount of their COBRA premiums would have exceeded their out-of-pocket expenses. The

---

[6]Their argument is that genuine issues of material fact preclude summary judgment on actual damages. As stated above, we review the district court's decision not to award statutory damages for abuse of discretion and therefore ask whether the district court relied on clearly erroneous factual findings. Yet we note that on de novo review we would find no genuine issues of material fact remain as to actual damages.

[7]The Coles insist Blue Cross denied $1,310 in claims beginning May 1, 2012. According to the Blue Cross statement of claims, Blue Cross denied $1,212 in claims during May 2012 and $95 in claims during June 2012, for a total of $1,307. The district court's use of $1,307 was therefore not clearly erroneous.

exact amount of the Coles' COBRA premiums was never established. But the record shows that Bonnie's last employee contribution was $135.12 per two-week pay period while Trinity Health's employer contribution was $405.37 per two-week pay period. And COBRA premiums may reach 102 percent of the plan premiums. See 29 U.S.C. §§ 1162(3)(A), 1164(1); Geissal v. Moore Med. Corp., 524 U.S. 74, 80-81 (1998) ("The beneficiary who makes the election must pay for what he gets, however, up to 102 percent of the 'applicable premium' for the first 18 months of continuation coverage, and up to 150 percent thereafter. The 'applicable premium' is usually the cost to the plan of providing continuation coverage, regardless of who usually pays for the insurance benefit." (citations omitted)); Kwan, 737 F.3d at 849 ("Had [the plaintiff] elected to receive coverage under COBRA, it is undisputed that she would have had to pay premiums in the range of hundreds or thousands of dollars each month."). In light of this, the district court did not clearly err in determining that the amount of the Coles' COBRA premiums would have exceeded their damages.

## III.

The Coles's next challenge the district court's decision not to award statutory penalties. They first contend the district court relied on three clearly erroneous facts.[8] One, the Coles claim the district court erroneously concluded they "received approximately eleven months of free health insurance coverage." They maintain the period of time was less than eleven weeks, starting when Unum denied Bonnie long-term disability benefits in October 2011, and ending when the Coles' coverage was retroactively terminated January 1, 2012. Strictly speaking, the Coles misattribute this "eleven months" quote: the district court recited "*Trinity Health* argues . . . the

---

[8]The Coles additionally argue genuine issues of material fact preclude summary judgment on statutory penalties. Again, although on de novo review we would find no genuine issues of material fact remain, we review only for abuse of discretion.

Coles received approximately eleven months of free health insurance coverage" (emphasis added). What the district court found was the Coles "received free health insurance coverage for a substantial period," "the Coles' benefit of receiving extended free health care coverage far outweighs their claimed damages from the lack of COBRA notice," and "the Coles were provided continued medical coverage for approximately eleven months after Bonnie's termination." As discussed above, the Coles received benefits through April 2012 even though Bonnie's coverage should have been terminated in June 2011, which amounts to about eleven months coverage. Against this, Bonnie made her last employee contribution during the pay period ending June 11, 2011.[9] Thus the district court's assessment of the coverage the Coles received after Bonnie's termination was not clearly erroneous.

Two, the Coles claim the district court mistakenly found they were able to obtain health care coverage beginning June 1, 2012. If this were the case, the Coles argue, then Trinity Health would not have needed to send them a letter dated June 19, 2012, purportedly to help them switch insurance. We are unpersuaded by this argument. Although the Coles were initially uncovered in early June 2012, the record is clear they later obtained coverage through Lyle's employer retroactively effective June 1, 2012. The district court's finding was not clearly erroneous.

---

[9]The Coles argue their "free" insurance did not begin until October 2011 because Bonnie paid "deductions" from the claims Unum paid under its "Reservation of Rights." But Unum paid those claims only provisionally, later denied Bonnie's long-term disability benefits request, and ultimately chose not to seek repayment of the benefits it provided. On these facts, we would find it not clearly erroneous to conclude the Coles' "free" insurance began in June 2011. Regardless, the district court looked to the fact that the Coles benefitted by Trinity Health's mistake. This conclusion remains the same whether the Coles' "free" coverage began in June or October 2011. Thus there was no abuse of the district court's discretion.

Three, the Coles claim the district court incorrectly stated they were without coverage for one month. They argue their lack of coverage began on January 1, 2012, when their benefits were retroactively terminated, and continued until at least mid-June 2012. Again, the Coles' benefits might have been retroactively terminated January 1, 2012, but they received benefits through April 2012. And while they might have been uncovered in early June 2012, they later obtained coverage retroactively effective June 1, 2012. The district court's finding was not clearly erroneous.

The Coles finally contend the district court abused its discretion by considering the wrong factors when declining to award statutory penalties. They maintain we have "repeatedly and clearly rejected" a "prejudice and good faith" standard. We disagree. We have consistently held that "[i]n exercising its discretion to impose statutory damages, a court primarily should consider the prejudice to the plaintiff and the nature of the plan administrator's conduct." Deckard v. Interstate Bakeries Corp. (In re Interstate Bakeries Corp.), 704 F.3d 528, 534 (8th Cir. 2013) (internal quotation marks omitted). We recognize, of course, that "[a]lthough relevant, a defendant's good faith and the absence of harm do not preclude the imposition of" a statutory penalty. Id. (internal quotation marks omitted). But this recognition stops well short of our having rejected the consideration of prejudice and good faith. Thus the district court acted consistent with our precedent when it found that "Trinity Health acted in good faith. Moreover, the Coles were not harmed or prejudiced by Trinity Health's tardy notice of their COBRA rights."

We therefore find unavailing the Coles' argument that the district court erred by not considering the delay in Trinity Health's actions, the decision to retroactively terminate the Coles' coverage, and the failure to quickly notify the Coles of this decision. We believe instead the district court did not abuse its discretion where there was no evidence Trinity Health willfully failed to notify the Coles of their COBRA rights or of the retroactive termination of their coverage, and where the district court

-9-

reasoned "if Trinity Health intended to act in bad faith, free health care coverage would not have been extended to the Coles." See In re Interstate Bakeries Corp., 704 F.3d at 537 (recognizing "finding of bad faith typically requires a willful failure" to send COBRA notice and upholding finding of good faith where employer was unaware it failed to send COBRA notice as it normally would and repaid all benefits that had been clawed back after termination of coverage (internal quotation marks omitted)); Starr, 461 F.3d at 1040 (upholding denial of statutory penalty where district court found employer did not act in bad faith because it did not willfully fail to send COBRA notice and provided benefits after scheduled termination).

## IV.

Accordingly, we affirm the grant of summary judgment to Trinity Health.

_____